Robert **BOGGILD**; William L. Dale,
Plaintiffs-Appellees,

v.

**KENNER PRODUCTS, a DIVISION OF CPG PRODUCTS CORP.,**
Defendant-Appellant.

No. 84–3467.

United States Court of Appeals,
Sixth Circuit.

Argued March 26, 1985.

Decided Nov. 13, 1985.

Rehearing and Rehearing En Banc
Denied Jan. 2, 1986.

out retaliation despite his own past violation as to time and attendance records.

Donald McG. Rose, Frost and Jacobs, Cincinnati, Ohio, Madeline Henricks Devereux (LC) (argued), Edward M. O'Toole, Marshall, O'Toole, Gerstein, Murray and Bicknell, Chicago, Ill., for defendant-appellant.

William Singer (argued), Cincinnati, Ohio, for plaintiffs-appellees.

* Honorable Anna Diggs Taylor, United States District Court for the Eastern District of Michigan, sitting by designation.

1. As found by the district court, the agreement was subsequently modified by a 1966 agreement between plaintiffs and Rainbow Crafts, Inc., also a predecessor in interest to Kenner, and by a 1971 agreement between plaintiffs and defendant Kenner Products Division. The 1963 agree-

Before KEITH and MARTIN, Circuit Judges, and DIGGS TAYLOR.*

KEITH, Circuit Judge:

The issue in this case is whether the terms of a licensing agreement, which the parties entered into prior to application for or issuance of anticipated but subsequently issued patents, can be enforced beyond the expiration dates of the patents. We hold that under the rule of per se invalidity established by *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), the terms of a licensing agreement calling for royalty payments beyond the life of the patent are unenforceable where the parties enter the agreement with clear expectations that a valid patent will issue. We therefore reverse the order of the district court granting partial summary judgment for the plaintiffs and remand for proceedings consistent with this opinion.

## FACTS

Over twenty years ago, the plaintiffs-appellees, Robert Boggild and William Dale, invented a toy extruder to be used with the modeling substance called Play-Doh. In January 1963, the plaintiffs granted Kutol Products, Inc. an exclusive license to make, use and sell the extruder in conjunction with its line of Play-Doh products. Kutol subsequently assigned its rights and obligations under the 1963 license agreement to the defendant-appellant, Kenner Products.[1] At the time the plaintiffs executed the agreement, no patents on the extruder had been issued or applied for. However, under Article II of the agreement, upon execution of the license the plaintiffs were required to promptly apply for mechanical and design patents on the extruder.[2] The

ment, however, is the only agreement pertinent to this appeal.

2. Article II of the 1963 agreement, entitled "Patent Applications," provides:

"B & D will promptly file and diligently prosecute at their expense both mechanical and design patent applications directed to said Extrusion Device in the United States and Canada.

plaintiffs' patent applications were subsequently issued with expiration dates of March 2, 1979 for the design patent and August 9, 1983 for the mechanical patent.

Under the agreement, Kenner, the licensee, was required to pay royalty payments for a minimum of twenty-five years from the date of the license, or January 18, 1988, regardless of whether the anticipated patents issued or not.[3] Thus, the agreement required the royalty payments to continue four and a half years beyond the latest patent expiration date.

In March 1983, the plaintiffs filed in state court a breach of contract action challenging the method used by Kenner to calculate royalties due on the selling price of the extruder devices. Kenner petitioned for removal to the federal district court and filed an answer to the plaintiffs' complaint. In its answer, Kenner generally denied that it improperly calculated royalties, and asserted two counterclaims. The first counterclaim alleged that the plaintiffs owed Kenner an amount of royalty overpayments. The second counterclaim alleged that due to the expiration of the patents, Kenner was no longer obligated to pay royalties, and, despite the terms of the agreement, was entitled to make, use and sell the toy extruders without further payments.

Upon consideration of the plaintiffs' motion for partial summary judgment on Kenner's second counterclaim, the district court determined that since the patents had issued after the parties entered into the licensing agreement, the agreement did not run afoul of the holding in *Brulotte v.*

*Thys Co.,* 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), prohibiting a patent licensor from using the leverage of its patent to extend royalty payments beyond the patent's seventeen year term. *Boggild v. Kenner Products,* 576 F.Supp. 533, 536–37 (S.D.Ohio 1983). Kenner appeals the district court's grant of partial summary judgment for the plaintiffs on Kenner's second counterclaim.

## DISCUSSION

The underlying policy of patent law grants a seventeen year monopoly to an inventor in exchange for release of the invention to the public upon expiration of the patent. *Scott Paper Co. v. Marcalus Manufacturing Co.,* 326 U.S. 249, 255, 66 S.Ct. 101, 104, 90 L.Ed. 47 (1945); *see Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 480–81, 94 S.Ct. 1879, 1885–86, 40 L.Ed.2d 315 (1974); *Lear, Inc. v. Adkins,* 395 U.S. 653, 673–74, 89 S.Ct. 1902, 1912–13, 23 L.Ed.2d 610 (1969); *Brulotte v. Thys Co.,* 379 U.S. 29, 30–31, 85 S.Ct. 176, 178, 13 L.Ed.2d 99 (1964); *Prestole Corp. v. Tinnerman Products, Inc.,* 271 F.2d 146, 155 (6th Cir.1959), *cert. denied,* 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960). Thus, for a limited time, the inventor exclusively reaps any material rewards from the invention on condition that she disclose it to the public upon expiration of the patent. *Scott Paper Co. v. Marcalus Manufacturing Co.,* 326 U.S. at 255, 66 S.Ct. at 104. The extensive social and economic consequences of the patent "give the public a paramount interest in seeing that patent monopolies are kept within their legitimate

---

\*    \*    \*    \*    \*    \*

"it is agreed that if B & D fails to file the patent applications in the United States and foreign countries specified above Kutol shall have the right to file the said applications and to deduct the costs of such filing from royalty payments owed to B & D."

**3.** Article IV(g) of the agreement provides for royalty payments regardless of compliance with Article II:

It is agreed by the parties hereto that the royalty payments provided for herein shall be paid by Kutol regardless of whether or not the filing of the patent applications contemplated

in Article II hereof results in the issuance of a patent or patents.

And, Article XIII(d), entitled "Termination", provides for royalty payments for a minimum of twenty-five years:

(d) Unless previously terminated in accordance with the foregoing provisions of this Article XIII, this agreement and the rights granted hereunder shall run to the full end of the term or terms of any Letters Patent that may issue on or as a result of the application or applications referred to in Article II hereof or for a period of 25 years, whichever is longer, and shall thereupon terminate.

scope." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945). Hence, efforts to extend or reserve the patent monopoly beyond the seventeen years contravene the policy and purpose of the patent laws. *Scott Paper Co.*, 326 U.S. at 255–56, 66 S.Ct. at 104; *Prestole Corp. v. Tinnerman Products, Inc.*, 271 F.2d at 155.

Accordingly, in *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), the Supreme Court found that an owner of patents on hop-picking techniques who executed licensing agreements requiring royalty payments beyond the life of the patent had improperly used the leverage of his patents to extend the monopoly. The patent owner issued a license for the use of each hop-picking machine sold to farmers for a flat sum. Under the license, hop farmers paid the greater of either a minimum royalty of $500 per hop-picking season or $3.33⅓% per two hundred pounds of hops harvested by the machine. The license also prohibited assignment and removal of the machines from the county where sold. All of the patents incorporated into the machines expired before the licenses. Nonetheless, the royalties and restrictions required under the licenses remained in identical effect both before and after the last patent expired.

The hop farmers eventually refused to pay royalties accruing both before and after the expiration of the patents. The patent owner sued to enforce the licenses under state contract law and the farmers defended with misuse of the patents through projection of royalties beyond the expiration date of the patents. The trial court enforced the licenses, however the Supreme Court of Washington affirmed.

The United States Supreme Court reversed. The Court determined that the license provisions described above were intrinsically designed to protect the privileges of the patent monopoly and that their identical application to the post-expiration period constituted a "bald attempt to exact the same terms and conditions for the peri-

od after the patents have expired as they do for the monopoly period." *Brulotte v. Thys Co.*, 379 U.S. at 32, 85 S.Ct. at 179. The Court found that, by their terms, the royalties were for use during the post-expiration period and did not constitute deferred payment for use during the pre-expiration period or a sale of unpatented machines through long term payments based on a deferred purchase price. *Id.* at 31–32, 85 S.Ct. at 179–80. Since the license provisions failed to distinguish between the pre-expiration and post-expiration periods, the Court was unable to determine whether the post-expiration royalties were subject to the leverage of the patent. *Id.* The Supreme Court concluded that under these circumstances the patent owner had abused the leverage of the monopoly to project royalties into the post-expiration period; the agreement, therefore, was unlawful *per se. Id.*

■ In the case at bar, the district court reasoned that the *Brulotte* rule of *per se* invalidity was inapplicable because, unlike the hop-picking patents in *Brulotte*, the toy extruder patents had not been issued at the time the parties entered into the licensing agreement. *Boggild v. Kenner Products*, 576 F.Supp. at 536–37. Thus, the district court distinguished the present case as one involving patents which issued after the agreement and which conferred "hybrid" rights entailing trade secrets as well as "potential patent rights in part." *Id.* The district court then rejected the Eleventh Circuit's holding in *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365 (11th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983), which concluded that the *Brulotte* rule of *per se* invalidity could be applied to hybrid agreements executed while applications for patents were pending:

In our view the Eleventh Circuit over extended the *Brulotte* rule. It is clear from that early case that the Supreme Court found that the agreement, on its face, revealed an improper leveraging of the patent monopoly. In *Brulotte*, the patents had issued; thus the patentee

had something that he could leverage. Here, no application had been made. We recognize that, regardless of whether an application has been made, one might improperly leverage the possibility that a patent might issue if the parties believe there is a substantial likelihood that a patent might issue. Under those circumstances, however, application of a per se rule is inappropriate. We hold, therefore, that the per se rule of *Brulotte* does not extend to the case where no patent application has been made at the time the agreement is negotiated even if an application is contemplated.

576 F.Supp. at 536–37. We reverse this judgment and hold that the *Brulotte* rule of *per se* invalidity precludes enforcement of license provisions which were developed in anticipation of patent protection and which require royalty payments for use, sale or manufacture of a patented item beyond the life of the patent.

The Eleventh Circuit's decision in *Pitney Bowes, Inc. v. Mestre*, is significant for several reasons. In *Mestre*, a prospective patent owner executed four licenses for the sole and exclusive rights to make and sell four different paper handling machines. Three of the agreements licensed both patent rights and trade secrets, one licensed only trade secrets,[4] but all four agreements entitled Mestre to collect royalties on each machine. As in the case at bar, patents for the machines issued after execution of the agreements. However, unlike plaintiffs Boggild and Dale, Mestre had filed patent applications before the agreements were struck. Also, as in *Brulotte* and the case at bar, the royalty and use provisions did not distinguish between rates of payment for the pre-expiration and post-expiration periods or between royalties attributable to the patent rights and those for any other

rights. Finally, like *Brulotte* and this case, the termination provisions in the *Mestre* agreements extended "hybrid" royalty payments beyond the life of the patent.

The United States District Court for the Southern District of Florida rejected Mestre's contention that the post-expiration royalties were attributable to the license for trade secrets and found that the hybrid agreement and Mestre's right to collect royalties thereunder ended upon expiration of the patent. *Pitney Bowes, Inc. v. Mestre*, 517 F.Supp. 52, 63 (S.D.Florida 1981). The Eleventh Circuit affirmed, ruling moreover that *Brulotte* was applicable to hybrid agreements and that issuance of the pending patent precluded enforcement of conflicting trade secret provisions. The circuit court found that under *Brulotte*, the agreement was invalid *per se* because the agreement's terms for royalty payments and exclusive use applied equally before and after expiration of the patent. 701 F.2d at 1373. Thus, the Eleventh Circuit found improper leveraging of the patent monopoly by applying *Brulotte*'s rationale of *per se* invalidity to an agreement where the patents had not issued at the time of licensing but were pending and where trade secret rights were expressly included with patent rights.

■ We agree with the Eleventh Circuit that once the pending patent issues, enforcement of royalty provisions for other rights which conflict with and are indistinguishable from royalties for patent rights, is precluded. As noted in *Mestre*, the Supreme Court has upheld enforcement of potentially conflicting state trade secret provisions in hybrid agreements *only where no patents ever issued*. See *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979);[5]

---

**4.** The district court found that one agreement entitled the "Rotary Collator Agreement" licensed trade secret rights only. 517 F.Supp. at 62. However, the Eleventh Circuit noted that during oral argument on appeal, Mestre conceded that like the other three, the Rotary Collator Agreement was a hybrid license for both patent rights and trade secrets. 701 F.2d at 1373 n. 13. The Court of Appeals invited the district court to consider Mestre's concession

and to apply *Brulotte* to the Rotary Collator Agreement as well. *Id.* Both the district court and Court of Appeals equated trade secrets with "know-how.", 517 F.Supp. 54 n. 1a; 701 F.2d at 1367 n. 4.

**5.** In our view, *Aronson*, lends further support to the contention that the *Brulotte* rule of *per se* invalidity is applicable to hybrid agreements in which royalties for patent rights are indistin-

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). Upon issuance of the patent, however, federal supremacy requires directly conflicting provisions to be resolved under federal patent law. *Pitney Bowes, Inc. v. Mestre*, 701 F.2d at 1372.

■ We also agree with the Eleventh Circuit that misuse of the leverage afforded by a *pending* patent is subject to the *Brulotte* rule of *per se* invalidity. In *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979) the Supreme Court acknowledged the leverage afforded to a patent owner by a pending patent application. Although the Court refrained from defining what constitutes abuse of such leverage, it described the nature of the leverage and the inquiry upon examination for abuse:

> No doubt a pending patent application gives the applicant some additional bargaining power for purposes of negotiating a royalty agreement. The pending application allows the inventor to hold out the hope of an exclusive right to exploit the idea, as well as the threat that the other party will be prevented from using the idea for 17 years. However, the amount of leverage arising from a patent application depends on how likely the parties consider it to be that a valid patent will issue.

440 U.S. at 265, 99 S.Ct. at 1100.

In *Mestre*, the agreement expressly referred to the pending patent applications, *see* 701 F.2d at 1370 n. 9, and several of its provisions would become enforceable only if the patents issued. On these facts, the Eleventh Circuit concluded that the parties had anticipated issuance of the patents and that Mestre had obtained sufficient leverage from the pending patents to warrant application of the analysis in *Brulotte*.

In our view, the same violations of patent law arising from abuse of the leverage attached to a pending or issued patent can arise from abuse of the leverage afforded by an expressly anticipated application for a patent. The agreement at bar aptly demonstrates this contention. As noted in the facts section of this opinion, Article II of the licensing agreement required the plaintiffs "to promptly file and diligently prosecute mechanical and design patent applications" for the toy extruder. In fact the parties decreed in Article VI that no royalties would be paid until the plaintiffs applied for the mechanical patent.

Throughout the licensing agreement, similar provisions reiterate the parties' anticipation and expectation of successful patent applications. Article IV of the agreement grants the exclusive right to manufacture, use and sell the licensed extruder. Article X provides that the defendant Kenner will admit the validity of any "patent under which rights herein are granted." Article XII gives Kenner the sole right to proceed against infringers of "any patents granted on the applications or inventions

guishable from those for other rights. In *Aronson* the Supreme Court reversed an Eighth Circuit decision applying *Brulotte* to terms of an agreement which provided for a 5% royalty for exclusive rights to a keyholder design but reduced royalty payments if the inventor failed to obtain a patent within five years after the agreement. The patent applications failed and the reduced royalties became effective for an indefinite term. The Eighth Circuit concluded that had the pending patent issued, royalty payments could not have continued beyond the 17 year monopoly period. The Eighth Circuit reversed the district court judgment enforcing the terms of the agreement. *Quick Point Pencil Co. v. Aronson*, 567 F.2d 757 (8th Cir.1977). The Supreme Court reversed and held that absent issuance of a patent, federal patent law does not preempt state contract law. The Court conclud-

ed the terms of the agreement contravened no purpose under the federal patent system and that the reduced royalty was not negotiated with the leverage of a patent. 440 U.S. at 265, 99 S.Ct. at 1100. In so holding, however, the Court specifically noted that had the patent issued, enforcement of the higher 5% royalty rate for exclusive rights beyond the life of the patent would have been precluded:

> "Mrs. Aronson attempted to obtain a patent for over five years. It is quite true that had she succeeded, she would have received a 5% royalty only on keyholders sold during the 17-year life of the patent."

440 U.S. at 263–64, 99 S.Ct. at 1099–1100. Thus, the Court would presumably have applied *Brulotte* to a "hybrid" agreement embodying rights conferred under both state law and the federal patent law.

herein licensed." And subparagraph (c) of Article XIII suggests the entire license was premised upon the issuance of patents: it gives Kenner the right to terminate the license in the event of unlicensed competition which the parties "are unable or unwilling to prevent or restrain." Paragraph XIV, entitled "Patent Infringement Search", required the plaintiffs to commission a patent infringement search by a reputable patent law firm within thirty days after execution of the agreement in order to determine the likelihood of receiving a patent. Moreover, as noted above in footnote 3 of this opinion, the termination provisions of Article XIII(d) not only contemplate the anticipated patents but expressly require all terms of the agreement to run a minimum of twenty-five years, four and a half years beyond the life of the subsequently issued mechanical patent.

Thus, the tenor of the licensing agreement compels us to find that the possibility of forthcoming patents on the toy extruder substantially contributed to the formation of the licensing agreement and that the parties assumed a high likelihood that valid patents would issue. The terms of the licensing agreement compel the conclusion that, at the time the parties executed the license, the plaintiffs exerted considerable leverage from the anticipated patents. In our view, the absence of a filed patent application is, under these circumstances, irrelevant to the analysis under *Brulotte.*

Having established the leverage from anticipated patents, our inquiry next focuses on whether such leverage was misused to project the monopoly beyond the life of the patent. In *Brulotte* the Supreme Court found a *per se* projection of the monopoly where the provisions protecting the exclusive rights conferred by the patent applied without change to the post expiration period and where royalties for use during the patent were indistinguishable from royalties due after expiration. *Brulotte v. Thys Co.,* 379 U.S. at 32, 85 S.Ct. at 179. In the

case at bar, the agreement calls for royalties on the sales of the patented extruder for a minimum of twenty-five years.[6] As in *Brulotte,* the agreement contains neither provisions for reduction of royalties in the event valid patents never issued nor terms for reduction of post-expiration royalties. The provisions for use of the extruder and payment of royalties are applicable to both the pre-expiration and post-expiration periods. Therefore, under *Brulotte,* the agreement is unlawful *per se.*

Accordingly, the district court's grant of partial summary judgment to the plaintiffs is hereby reversed.

---

**6.** Although Article VI of the agreement requires royalty payments whether the patents issued or not, the only royalties required are those on sales of the patent device. In light of the par-

ties' clear contemplation of successful patent applications, the disclaimed relevance of the patent in Article VI must be discounted.