GEORGE DELANEY *et al.*, Plaintiffs-Appellants, v. MARCHON, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—92—0222

Opinion filed September 29, 1993.

Stephanie W. Kanwit and Katherine A. Williams, both of Lamet, Kanwit & Associates, of Chicago, for appellants.

Charles A. Laff and Lawrence R. Robins, both of Laff, Whitesel, Conte & Saret, and Alan I. Green and Kenneth G. Kolmin, both of Schwartz & Freeman, both of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiffs, George Delaney and Rehkemper I.D., Inc., brought an action for an accounting, declaratory judgment, preliminary injunction, and other equitable relief, arising from a business arrangement between them and defendant, Marchon, Inc. After the preliminary injunction was denied, plaintiffs filed first and second amended complaints. The trial court granted with prejudice defendant's section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) motions to dismiss both complaints.

On appeal, plaintiffs assert that the trial court erred in dismissing the second amended complaint with prejudice for failure to state a cause of action because (1) the dismissal does not do substantial justice between the parties; (2) the allegations of the complaint are clear and consistent; (3) the "mend the hold" doctrine does not apply; (4) the *Brulotte* (*Brulotte v. Thys Co.* (1964), 379 U.S. 29, 13 L. Ed. 2d 99, 85 S. Ct. 176) rule is inapplicable; (5) a claim for a joint venture has been stated; and (6) a claim for unjust enrichment has been stated. We reverse and remand this cause for further proceedings on plaintiffs' second amended complaint.

The issue in this case is whether State contract law or Federal patent law applies where the complaint alleges an agreement based partially on an unsigned written agreement contemplating a patent license application and partially on an oral agreement.

Plaintiff George Delaney is an invention broker who represents inventors and licenses their ideas and products to toy manufacturers. Plaintiff Rehkemper, I.D., Inc., is an industrial design firm that invents, designs, and develops ideas for toys that are then sold to manufacturers. Defendant Marchon, Inc., is a toy manufacturer.

In 1985, the parties entered into negotiations regarding themed water slide toys where plaintiffs would receive royalties from defendant in exchange for their research, design, and development of a line of water slide toys. On October 21, 1985, defendant sent plaintiffs a letter including a copy of defendant's standard licensing agreement, which was enclosed for plaintiffs' review. The agreement was never signed nor its terms completed.

Paragraph 1 of the agreement provides:

"LICENSOR hereby grants LICENSEE, the sole and exclusive worldwide rights to manufacture, to have manufactured for it, to use and sell the ITEM and the subject matter of all patent applications which are to be filed on the ITEM, pursuant to Paragraph 2 hereof, in the United States and in any other

country or territory for which LICENSEE executes a sub-license agreement, and/or is distributing the ITEM."

Paragraph 2 provides:

"LICENSOR agrees to use its best efforts and to bear the expense of obtaining United States patent protection that will adequately protect the ITEM from competition. In accordance with this provision, the application for a patent will be filed in the U.S. Patent Office."

Paragraph 15 of the Agreement further provides:

"This agreement shall continue for the life of the patent or patents that may be granted on the ITEM, and/or as long as the ITEM covered by this agreement shall continue to be manufactured or sold, whichever is longer, unless sooner terminated under the provisions of this Agreement."

In 1986, 1987, and 1988, plaintiffs received royalties from defendant's sales of the toys manufactured from plaintiffs' concepts. In 1989, defendant stopped the royalty payments.

Shortly afterwards, plaintiffs filed a complaint requesting an accounting, declaratory judgment, and a preliminary injunction. When the preliminary injunction was denied, plaintiffs filed their first amended complaint, alleging causes of action for breach of fiduciary duty, unjust enrichment, breach of contract, an accounting, a constructive trust, and a declaratory judgment. Plaintiffs alleged that the parties entered into a contract that embodied the terms of defendant's "Standard Licensing Agreement," which explicitly contemplates that plaintiffs would obtain patent protection.

In the original complaint, plaintiffs alleged:

"10. The licensing agreement for the water slide project was to be Marchon's Standard Licensing Agreement.

\* \* \*

Plaintiffs would receive royalties on any product manufactured by Marchon at any time which employed the concepts of plaintiffs' themed water slide."

The first amended complaint, which was the only one of the three complaints to be verified, provided:

"10. The licensing agreement for the water slide project was Marchon's Standard Licensing Agreement. \*\*\* Although the Licensing Agreement was never signed, it embodies the agreement between the parties.

\* \* \*

Plaintiffs would receive royalties on any product manufac-

tured by Marchon at any time which employed the concepts of plaintiffs' themed water slide."

Additionally, plaintiffs' affidavits, which were incorporated into the first amended complaint, stated that "Marchon's Standard Licensing Agreement *** was to govern the licensing agreement with Marchon" and that "[a]ll the parties considered themselves bound by Marchon's Standard Licensing Agreement."

Defendant brought a motion to dismiss the first amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), alleging that the complaint could not stand because its own form "Standard Licensing Agreement," which plaintiffs had attached to their complaint, was illegal and unenforceable.

The trial court dismissed the complaint with prejudice for failure to state a cause of action. The court ruled that it would consider an amended complaint only on the presentation of a brief in support of a motion for leave to amend. The trial court based its dismissal on the United States Supreme Court decision in *Brulotte v. Thys Co.* (1964), 379 U.S. 29, 13 L. Ed. 2d 99, 85 S. Ct. 176, and the Seventh Circuit decision in *Meehan v. P P G Industries, Inc.* (7th Cir. 1986), 802 F.2d 881.

Plaintiffs timely moved for leave to file a second amended complaint with a supporting brief. The second amended complaint alleges the same causes of action as were alleged in the first amended complaint. The two complaints differed significantly, however, in their allegations describing the alleged contract between the parties. In the second amended complaint, the allegations were substantially changed:

"10. The parties entered into an oral licensing agreement for royalties on the water slide project. One basis for negotiation was Marchon's Standard Licensing Agreement. The Licensing Agreement itself was never signed by the parties, and was not the final agreement.

11. Under the oral agreement, plaintiffs granted Marchon the sole and exclusive worldwide rights to manufacture, use and sell the themed water slide toys they had developed.

12. Marchon promised to pay plaintiffs royalties at 3% of net sales.

13. During negotiations, the question of patenting the themed water slide toys was not discussed as part of the oral agreement.

14. On information and belief, when Marchon manufactured and packaged the products, they were not marked 'patent pending' nor was any attempt made by either party to patent the product."

The allegations of plaintiffs' unjust enrichment claims were also changed to claim that defendant has kept plaintiffs' "ideas, designs and royalties." Elsewhere, plaintiffs continued to allege that defendant agreed to pay royalties for the use of "the concepts of plaintiffs' themed water slides."

No patent application was ever filed. Defendant filed a motion to dismiss the second amended complaint on the grounds, among others, that it violated the "mend the hold" doctrine and that plaintiffs continued to allege a contract that was illegal and unenforceable under *Brulotte*. The motion was granted. The trial court dismissed the second amended complaint because: (1) its allegations are "vague and confusing;" (2) it runs afoul of the "mend the hold" doctrine; and (3) it is barred by the *Brulotte* doctrine.

On appeal, plaintiffs assert that the trial court erred when it applied *Brulotte*. In *Brulotte*, a patent owner of hop-picking techniques sold machines to farmers for a flat sum. At the same time, the patent owner executed a licensing agreement requiring royalty payments beyond the life of the patents. Eventually, the farmers stopped paying the royalties and the patent owner sued to enforce the licenses under State contract law. *Brulotte*, 379 U.S. at 29-30, 13 L. Ed. 2d at 100-01, 85 S. Ct. at 177-78.

Basing its conclusion on the unchanging nature of the license agreement terms after the patent expired, the Supreme Court held that the owner's use of a royalty agreement that extended royalty payments unchanged beyond the life of a patent is unlawful *per se* because the patent leverage had been abused. *Brulotte*, 379 U.S. at 32, 13 L. Ed. 2d at 102, 85 S. Ct. at 179.

The Seventh Circuit applied the *Brulotte* rule in *Meehan v. P P G Industries, Inc.* (7th Cir. 1986), 802 F.2d 881, 884, where the court extended the rule to agreements entered into in anticipation of a patent application. In *Meehan*, the plaintiff invented a method and apparatus for packaging and dispensing anti-icing products to be added to fuels in internal combustion engines in order to prevent ice formation. The court considered a license agreement that provided for royalty payments until the expiration of the last-issued patent. At the time the agreement was executed, the issuance of United States and foreign patents was anticipated by the parties. *Meehan*, 802 F.2d at 882-83.

In explaining its ruling, the court stated that the abuse of the leverage afforded by an expressly anticipated patent application was comparable to the abuse of leverage attached to a pending or issued patent. (*Meehan*, 802 F.2d at 885-86.) Thus, the court concluded that the agreement was *per se* unlawful because the agreement's terms demonstrated that the plaintiff used his right to obtain a patent to project his monopoly power beyond the patent period. *Meehan*, 802 F.2d at 886.

*Meehan* is distinguishable from this case, however, because the license was issued contingent on the issuance of a patent, the patent had expired, and plaintiff sought royalties beyond the life of the issued patent. The *Meehan* court specifically relied on an issued patent that had expired. Here, there was no patent ever applied for or issued.

Plaintiffs urge this court to apply *Aronson v. Quick Point Pencil Co.* (1979), 440 U.S. 257, 59 L. Ed. 2d 296, 99 S. Ct. 1096, where the Supreme Court held that State contract law was not preempted by Federal patent law in a case where no patent issued. In *Aronson*, the executed agreement provided for different royalty payments depending on whether the pending patent application was approved or denied. If a patent was issued, the royalty would be 5% of the sales. If the patent application was rejected, however, the royalty payment would be reduced to 2½% of the sales. *Aronson*, 440 U.S. at 259-60, 59 L. Ed. 2d at 300, 99 S. Ct. at 1098.

The Court found that the parties contracted with the full awareness that the patent might not be issued. Based on the distinction in royalty rates, the Court held:

> "[I]t is clear that the parties contracted with full awareness of both the pendency of a patent application and the possibility that a patent might not issue. The clause de-escalating the royalty by half in the event no patent issued within five years makes that crystal clear. Quick Point apparently placed a significant value on exploiting the basic novelty of the device, even if no patent issued; its success demonstrates that this judgment was well founded. Assuming, *arguendo*, that the initial letter and the commitment to pay a 5% royalty was subject to federal patent law, the provision relating to the 2½% royalty was explicitly independent of federal law." *Aronson*, 440 U.S. at 261-62, 59 L. Ed. 2d at 301, 99 S. Ct. at 1099.

In response, defendant asserts that the complaint's dismissal should be affirmed because the second amended complaint is predicated on an illegal and unenforceable agreement. To support its posi-

tion, defendant relies on *Boggild v. Kenner Products, Division of C P G Products Corp.* (6th Cir. 1985), 776 F.2d 1315, 1319, where the court held that the *Brulotte* rule of *per se* invalidity precludes enforcement of license provisions that were made in anticipation of patent protection and that require royalty payments beyond the life of the patent. In *Boggild*, a toy inventor entered into a toy license agreement that provided that he seek patent protection promptly upon execution of the license. (*Boggild*, 776 F.2d at 1316.) The agreement required the licensee to make royalty payments for a minimum of 25 years regardless of whether a patent issued on the toy extruder. (*Boggild*, 776 F.2d at 1317.) The patents were issued after the agreement was executed. (*Boggild*, 776 F.2d at 1317.) In finding the license illegal *per se* under *Brulotte*, the court stated that "the same violations of patent law arising from abuse of the leverage attached to a pending or issued patent can arise from abuse of the leverage afforded by an expressly anticipated application for a patent." *Boggild*, 776 F.2d at 1320.

Defendant is incorrect when it states that no patent issued in *Boggild*. A patent was issued after the agreement was executed. Therefore, the case is similar to *Meehan* and is not helpful by itself. Defendant cites no cases where a patent was not issued or applied for.

For the purposes of a motion to dismiss, all well-pleaded facts are admitted and the reasonable inferences that may be drawn from them are taken as true. (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134, 390 N.E.2d 72.) The complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that will entitle the plaintiff to relief. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 837, 422 N.E.2d 86.) In considering a motion to dismiss, the pleadings are to be strictly construed against the pleader. *Marozas v. Board of Fire & Police Commissioners* (1991), 222 Ill. App. 3d 781, 791, 584 N.E.2d 402.

■ We hold that the trial court improperly dismissed the second amended complaint. Contrary to the trial court's ruling, the *Brulotte* rule was not triggered because no patent was ever issued or even applied for. Furthermore, according to the complaint, the parties did not discuss patents in connection with their agreement. Thus, the cases applying the *Brulotte* rule to those agreements that contemplate a patent do not apply in this case.

Although the written agreement was never signed, the contract was partially oral and partially based on the unsigned licensing agreement. However, paragraphs 3, 6, 9, and 16 of the licensing agreement do not include the percentage or amount nor is the subject of the li-

censing agreement even mentioned. The essential terms of the agreement are that plaintiffs were to receive 3% royalties on all items sold that contained their concepts. Royalties were actually paid during the years 1986, 1987, and 1988, which implied that there was an executed agreement.

Plaintiffs should be allowed to proceed with this case beyond the pleading stage. Thus, we reverse the dismissal of the second amended complaint and remand this cause for further proceedings on that complaint. If, however, defendant proves during the summary judgment or trial proceedings that there was an agreement that an application for a patent was contemplated, then as a matter of law the court should declare the agreement unlawful *per se*. (*Meehan*, 802 F.2d 881.) In essence, this is a hybrid trade secret and patent agreement. Thus, once a patent issues, the conflicting and undistinguishable trade secret provisions become unenforceable. (*Boggild*, 776 F.2d at 1319.) However, no patent was issued in this case and State contract law applies.

In addition, defendant should be allowed to place into evidence the first amended complaint in any summary judgment or trial proceeding. The agreement alleged in that complaint is an agreement based entirely on an unexecuted licensing agreement. Whereas in the second amended complaint, plaintiffs alleged that there was a partial oral agreement.

■■ Next, plaintiffs assert that the trial court did not consider that equity could require royalty payments for a term of 17 years in order to do justice between the parties. This issue is waived because no such argument was made to the trial court and no legal support for this position has been provided in this appeal.

■■ Next, plaintiffs assert that the "mend the hold" doctrine does not apply to this case. We agree. The "mend the hold" doctrine is a common law doctrine that limits the right of a party in a contract suit to change its litigating position. (*Gibson v. Brown* (1905), 214 Ill. 330, 341, 73 N.E. 578; *Harbor Insurance Co. v. Continental Bank Corp.* (7th Cir. 1990), 922 F.2d 357, 362.) In *Harbor Insurance Co.*, the court raised the issue of whether the doctrine applies at the pleadings stage or a later stage in the litigation. (*Harbor*, 922 F.2d at 364.) The court, however, did not determine the doctrine's outer limits. Instead, it acknowledged that the Illinois Supreme Court has described the doctrine as one that estops a contract party from changing the grounds on which he has refused to perform the contract, whether or not it was a ground stated in a pleading or otherwise in the course of litigation. *Harbor*, 922 F.2d at 364.

Although the law on the "mend the hold" doctrine is unclear, it seems to apply only in summary judgment and trial proceedings. There is no case law that clearly holds that the doctrine applies at the pleading stage. In accordance, we decline to apply the "mend the hold" doctrine to the pleading stage.

Since the trial court did not rule on the breach of fiduciary duty, joint venture, and unjust enrichment counts, we decline to address those issues.

Based on the foregoing, the circuit court judgment is reversed and remanded for further proceedings on plaintiffs' second amended complaint.

Reversed and remanded.

RIZZI and GREIMAN, JJ., concur.