713 F.2d 197
 TIF INSTRUMENTS, INC., Plaintiff-Appellee-Cross-Appellant,
v.
Michael COLETTE, d.b.a. Colectric Co., and Colette Electric
Company, Defendants-Appellants-Cross-Appellees.
 Nos. 80-1698, 80-1775.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 23, 1983.
Decided July 29, 1983.
As Amended Aug. 4, 1983.
 
 David A. Maxon, Detroit, Mich. (argued), for defendants-appellants-cross-appellees.
 Barry D. Rein (argued), Pennie & Edmonds, New York City, for plaintiff-appellee-cross-appellant.
 Before MARTIN, CONTIE* and NIES,** Circuit Judges.
 NIES, Circuit Judge.
 
 
 1
 Michael Colette, d.b.a. Colectric Co., and Colette Electric Company (Colette) appeal from an adverse judgment in a patent infringement suit entered by default as a sanction for refusal to comply with court-ordered discovery. TIF has cross-appealed from the denial of attorneys' fees under Fed.R.Civ.P. 37(b), or alternatively, for damages and costs under Fed.R.App.P. 38 (Rule 38) in connection with a frivolous appeal. We affirm the default judgment and award damages, including attorneys' fees, and costs under Rule 38 against Colette and his attorney, David A. Maxon.
 
 
 2
 * TIF commenced this action on June 7, 1974. Colette's answer denied the validity and infringement of TIF's patent and asserted counterclaims of patent misuse and tortious conduct amounting to unfair competition. Discovery began in 1974. TIF filed a first set of interrogatories and request for production of documents. Colette answered a portion of one interrogatory and objected to all other interrogatories and to the request for documents. TIF moved to compel Colette to provide the sought-after answers and documents. In response, on February 27, 1975, the District Court, per Judge Churchill, ordered counsel to seek to compromise their discovery differences, as provided in Local Court Rule IX(k) of the Southern Division for the Eastern District of Michigan, and if they were unable to do so, to file a stipulation within 30 days advising the court of the issues settled and those unsettled.
 
 
 3
 On March 21, 1975, TIF's counsel and Colette's counsel, David A. Maxon, met in Mr. Maxon's office in an attempt to resolve their differences. As agreement could not be reached on all matters, the results of the conference were reported to the court in a stipulation. The matters over which agreement was reached and those which remained to be resolved were set forth in separate numbered paragraphs, as required under the order.
 
 
 4
 With respect to a Protective Order, the stipulation provided:
 
 
 5
 2. Counsel will proceed with dispatch to arrive at a mutually satisfactory Protective and Secrecy Order and will present to this Court the same for approval promptly thereafter.
 
 
 6
 3. Counsel for Colette will identify all documents (except privileged) requested to be identified on Plaintiff's Interrogatories 1-25 and produce those documents designated trade secret or business information by counsel for Colette et al only after approval by this Court of said Protective and Secrecy Order.
 
 
 7
 4. All of the non-contingent acts stipulated in Paragraphs 1-3 above and Paragraph 5 below hereof will be completed by May 1, 1975, at which time a final response to this Court's Order dated February 24, 1975, will be supplied to the Court.
 
 
 8
 The court entered the stipulation as an order on April 21, 1975 (hereinafter "the Stipulation"). The parties were unable to reach agreement on the terms of a protective order by May 1, 1975, or, indeed, at any time.[1] The matter was brought to a head in September of 1976, by TIF's service of a notice to take the deposition of Michael Colette and a subpoena duces tecum. Colette's counsel filed a motion to quash the subpoena arguing that TIF was seeking only to discover confidential information and that Colette should not be forced to answer without a protective order. TIF countered by moving for entry of a protective order in terms which it drafted. Colette opposed TIF's proposed order, asserted that TIF had made a misrepresentation to the court in the terms of the Stipulation, and presented an alternative draft of such order.
 
 
 9
 At a hearing held November 22, 1976, all of the above matters were raised and considered.[2] By order dated January 11, 1977, Judge Churchill entered a protective order paralleling the TIF draft (the Protective Order), and then denied the motion to quash as moot.
 
 
 10
 TIF again tried to conduct discovery. Michael Colette did not appear and no documents were produced. Instead, on the day scheduled for the deposition, March 7, 1977, TIF's counsel received another Colette motion to quash. It is at this point that Colette began to focus on the alleged impropriety of Judge Churchill's action in entering the Protective Order. Colette contended that it was not bound to honor the Protective Order because that Order was not "mutually satisfactory" as "required" by the "Stipulation." That contention by Colette remains the heart of this controversy.
 
 
 11
 In response, TIF moved to hold Colette and his counsel, Maxon, in contempt and for sanctions, costs, and attorneys' fees. Judge Churchill, upon the hearing of the motions, on March 28, 1977, denied Colette's motion and agreed with TIF "that there was a failure to comply with discovery--proper notice--absolutely disregarded." Judge Churchill imposed the sanction of allowing a default judgment (by striking the answer) unless Colette appeared for depositions within two months, produced the documents for inspection, and prior thereto, paid the costs and attorneys' fees incurred by TIF in seeking sanctions.
 
 
 12
 TIF and Colette continued to have disagreements over discovery of Colette's documents under the Protective Order. After a hearing to determine the dollar amount of the sanctions, at which Colette attempted to reargue the matter of the terms for document disclosure, Judge Churchill, in an Order dated June 30, 1977, reaffirmed that the Protective Order was in effect, ordered that the documents be produced for copying on July 6, 1977, and that the deposition occur on July 12, 1977, or a default would result.
 
 
 13
 After numerous motions by Colette in various forms aimed at upsetting the earlier orders imposing sanctions, Judge Churchill entered a further order on July 12, 1977, denying all such motions stating:
 
 
 14
 Every subsequent step [since entry of the Protective Order] up to and including the filing of the above-mentioned motions has been the direct and almost inevitable result of the absolute refusal of the defendant(s) and/or his counsel to recognize the validity of the Court's order. Complex civil litigation can proceed to ultimate conclusion only through the discovery process. Counsel and parties are not and must not be free to pick and choose between court orders with which they elect to comply and with which they elect to ignore. The Court has imposed and attempted to enforce sanctions in this matter, not to punish anyone and not to prevent a party from asserting its legitimate defenses and claims, but rather to cause the necessary pre-trial discovery stages of litigation to proceed in an orderly manner. The dilemma in which the defendant now finds himself was completely foreseeable and results from the continued failure to accept the Court's authority in this litigation.
 
 
 15
 Colette filed an appeal with this Court from that order and challenged the earlier orders imposing sanctions. That appeal was dismissed three times due to Colette's delays and ultimately was dismissed for lack of jurisdiction inasmuch as no final judgment had yet been entered. TIF Instruments, Inc. v. Colette, No. 77-1592 (Feb. 21, 1980).
 
 
 16
 After this Court's fourth dismissal of Colette's interlocutory appeal, Judge Churchill entered default judgment against Colette on September 16, 1980. In that judgment, the District Court held that the patent-in-suit was "duly and legally issued"; that TIF is the owner thereof; that Colette's "acts of infringement hav[e] been established"; and that the infringement was "willful, wanton, and deliberate." The judgment proceeded to order and adjudge that Colette and others "are permanently enjoined from infringing" and to tax costs against Colette.
 
 
 17
 In a memorandum opinion accompanying the default judgment, Judge Churchill denied TIF's motion for an award of attorneys' fees at the trial level and further held that, absent instructions from this Court, he had no authority to impose, as a sanction, an award of attorneys' fees incurred by TIF in opposing Colette's interlocutory appeal.
 
 
 18
 TIF, while not agreeing to the propriety of denying earlier costs and attorneys' fees under Fed.R.Civ.P. 37(b),[3] seeks recovery only for the period from the date of the order in which Judge Churchill set final dates for compliance, i.e., June 30, 1977, which would include fees in connection with the interlocutory appeal. TIF seeks such recovery either under the above rule or from this Court under Fed.R.App.P. 38.[4] TIF characterizes the conduct of the case as "attorney's legal maneuvering" and seeks recovery from Colette's attorney as well as from Colette.
 
 II
 
 19
 The essence of Colette's position is that the trial judge had no authority to enter the Protective Order and, therefore, Colette's admitted refusal to proceed with discovery under its terms cannot be the basis for sanctions.
 
 
 20
 Colette's theory is that the trial judge was bound by the Stipulation of the parties purportedly to the effect that confidential information would be disclosed only upon "mutually agreeable" terms. Colette reasons that since the Protective Order entered by the court is not agreeable to Colette, it is contrary to the Stipulation, and since the court had adopted the Stipulation as its order, and has never nullified it, the court should not, indeed could not, have issued the "conflicting" Protective Order.
 
 
 21
 Colette asserts it was error for the trial court (1) to ignore the Stipulation in setting the terms of the Protective Order, one of which is that Colette must consent to any disclosure; (2) to order Colette to do acts which TIF stipulated it was not required to do, again to make disclosure under an order to which Colette did not consent; (3) to enforce part of the Stipulation but not all of it; and (4) to apply Rule 37 sanctions when Colette's conduct was excused by the Stipulation.
 
 
 22
 Colette's view that no valid protective order could be entered by the court without Colette's consent to its terms is wholly without merit. Regardless of the various guises in which Colette has attempted to present this premise, Colette's appeal is patently frivolous.
 
 
 23
 To place the Protective Order in proper perspective, we need first to focus on two previous orders of the trial court.
 
 
 24
 1. February 24, 1975--Order to resolve discovery differences and report to court by April 21, 1975.
 
 
 25
 2. April 21, 1975--Stipulation in response, which was entered as an order of the court.
 
 
 26
 The February 24, 1975, order was entered in accordance with Local Court Rule IX(k). Pursuant to that order the parties presented a stipulation to the court which advised the court what discovery matters had been resolved and what matters remained unresolved. The parties stipulated that the terms of a protective order had not been resolved. Appellant does not attack the validity of that representation to the court.
 
 
 27
 It is a gross distortion to say that the Stipulation contains terms which the parties had agreed to be included in a protective order (and which the court ignored). The Stipulation contained no more than a joint explanation with respect to an unresolved matter, a representation that the parties' efforts were in good faith, and a joint request to be allowed to continue these efforts.
 
 
 28
 We wholly reject Colette's position that the court was somehow hamstrung by the parties' representation that they would "proceed with dispatch to arrive at a mutually satisfactory protective and secrecy order." The only effect of the court's acceptance of this part of the Stipulation was to grant the parties additional time to work towards an agreement. For another eighteen months, the parties continued to harangue. Thus, at the time the court entered the Protective Order and required Colette to make discovery, this case had been pending for two and a half years before the court with virtually no progress towards its resolution. Until the ground rules for discovery were fixed, no progress could be made. We see no possible basis for holding that a trial judge as a matter of law has no power to enter a protective order on such reasonable terms as he deems appropriate under these circumstances. The work of the court cannot be paralyzed by lack of agreement of the parties.
 
 
 29
 Moreover, the Stipulation itself recognizes that any protective order agreed to by the parties would be ineffective without the approval of the court. Even without this explicit recognition in the Stipulation, the court would, of course, have power to disapprove, modify, alter or amend any proposed or existing order. Fed.R.Civ.P. 26(c) and (f). However, the fact that approval of the court is mentioned in the Stipulation affirms our conviction that the argument advanced by counsel that the Stipulation ipso facto bound the court to certain terms is put forth not from ignorance but, as found by Judge Churchill, from bad faith.
 
 
 30
 The provisions of the Stipulation also undercut Colette's position that Colette has done no more than adhere to its terms. Properly viewed, the April 21, 1975 order gave the parties an extension of time. We do not believe any reasonable legal mind would advance the argument that the April 21, 1975 order excused Colette from compliance with the later court order.[5]
 
 
 31
 In view of the foregoing, we affirm the entry of default judgment and the injunction. Further, we hold that Colette's appeal and its previous appeal which raised the same arguments are frivolous and therefore exercise this court's authority under Fed.R.App.P. 38 to award damages and costs to TIF.[6] TIF will be awarded its costs and attorneys' fees since June 30, 1977, in an amount to be determined by the district court. See Seyler v. Seyler, 678 F.2d 29 (5th Cir.1982). Moreover, since we have concluded that the grounds urged for reversal of the decision below are patently frivolous, and, as found by Judge Churchill, were asserted in bad faith, we deem it proper to assess those costs and attorneys' fees against Colette's counsel as well. Roadway Express, Inc. v. Piper, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980). Accordingly, we accept TIF's suggestion that the fees and costs be assessed against both Michael Colette and Colette's counsel, David A. Maxon. The district court shall make each of them responsible for that portion of the amount determined, as it deems appropriate, without recourse against the other, but in no event shall David A. Maxon be held responsible for less than one-half of the amount.
 
 
 32
 AFFIRMED AND REMANDED FOR HEARING on the amount of TIF's attorneys' fees and costs which are awarded to it.
 
 
 
 *
 This case was originally argued to a panel composed of Circuit Judges Kennedy, Martin, and Nies. Before a decision was reached Circuit Judge Kennedy recused herself when it appeared that acting in the absence of Judge Churchill she had signed an order in this case. Circuit Judge Contie was substituted for Circuit Judge Kennedy and reargument was had
 
 
 **
 The Honorable Helen W. Nies, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 The parties refer to a protective and "secrecy" order. We are unable to discern how a "secrecy" order, such as that imposed under 35 U.S.C. § 181 (1976), would have been necessary. Apparently, Colette, without explanation, sought an order limiting disclosure of its confidential documents to a "viewing" of those documents by TIF's counsel rather than permitting TIF's counsel to copy those documents
 
 
 [2]
 The alleged misrepresentation over the terms of the Stipulation was that TIF erroneously attached a draft of the Stipulation as an exhibit to its motion rather than the one earlier made of record (i.e., on April 21, 1975). This error was brought to Judge Churchill's attention during the hearing and can avail appellant nothing here
 
 
 [3]
 Fed.R.Civ.P. 37(b)(2)(A)-(E) lists sanctions for failure "to obey an order to provide or permit discovery" and requires payment of "expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified ...."
 
 
 [4]
 Fed.R.App.P. 38 reads:
 If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.
 "Damages" has been uniformly interpreted to include attorneys fees. Northcross v. Board of Education of Memphis City Schools, 489 F.2d 19, 20 (6th Cir.1973), cert. denied, 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974). See also Wood v. McEwen, 644 F.2d 797, 802 (9th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982); United States v. Rayco, Inc., 616 F.2d 462, 464 (10th Cir.1980).
 
 
 [5]
 Colette's final salvo is that the merits of this case are not yet finally resolved because the judge did not address their counterclaims. The counterclaims which were in the nature of affirmative defenses were necessarily adjudged adversely to Colette in view of the issuance of a permanent injunction. Also, the court need not take jurisdiction over the pendant state law claims. With respect to Colette's assertions that TIF failed to include certain papers in its appendix, we note that the papers said to be missing are primarily certificates of service and, in any event, all papers necessary to proper consideration of this appeal were included in the appendix and the other ancillary papers argued about were designated as part of the record sent up to this court
 
 
 [6]
 In view of our holding that TIF is to recover attorneys' fees and costs under Fed.R.App.P. 38, we need not consider whether Fed.R.Civ.P. 37(b) is applicable