**Robert BOGGILD & William Dale,
Plaintiffs–Appellants,**

v.

**KENNER PRODUCTS, DIVISION OF
CPG PRODUCTS CORPORATION,
Defendant–Appellee.**

No. 87–3522.

United States Court of Appeals,
Sixth Circuit.

Argued April 28, 1988.

Decided Aug. 5, 1988.

William B. Singer, argued, Santen, Shaffer & Hughes, Cincinnati, Ohio, for plaintiffs-appellants.

Donald McG. Rose, Cincinnati, Ohio, Madeline Henricks Devereux, argued, Chicago, Ill., Edward M. O'Toole, for defendant-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

The plaintiffs-appellants, Robert Boggild and William Dale (plaintiffs), appealed from the order of the district court in this contract action against the defendant-appellee, Kenner Products (defendant or Kenner). On March 24, 1983, the plaintiffs filed an action in the Common Pleas Court of Hamilton County, Ohio, alleging that the defendant had breached the terms of a licensing agreement between themselves and Kenner. The defendant successfully petitioned for removal to the United States District Court for the Southern District of Ohio, based upon diversity jurisdiction, and filed an answer to the complaint and counterclaimed alleging that the licensing agreement at issue was unenforceable as a matter of law as to all royalties accruing after the expiration of the underlying patents. The district court ultimately granted summary judgment to the defendant on its counterclaim.

The record disclosed the following facts. In early 1963, Kutol Products, Inc. (Kutol), invented a brightly colored and scented modeling compound it trade named Play–Doh, which was similar in texture and composition to clay, and which it offered for sale to the children's toy market. Contemporaneously, the plaintiffs invented a mechanical extrusion device it trade named the Fun Factory, Jr., to mold the Play–Doh into a variety of different configurations. During the year 1963, the plaintiffs licensed the Fun Factory, Jr. to Kutol, under the terms of which the plaintiffs were to receive royalties on all Kutol Fun Factory, Jr. sales for a minimum period of twenty-five years. Pursuant to the contract, the plaintiffs agreed to promptly apply for mechanical and design patents for the device. The licensing agreement stipulated that the royalty that attached to each Fun Factory, Jr. sale was to be uniform during the entire twenty-five year period of the contract. The plaintiffs' patent applications were subsequently issued with expiration dates of March 2, 1979 for the design patent and August 9, 1983 for the mechanical patent. Accordingly, Kutol's responsibility under the licensing agreement required it to pay royalties to plaintiffs until 1988, more than four years after the underlying patents on the extruder device expired in 1983.

In 1963, subsequent to consummating its licensing agreement with plaintiffs, Kutol sold all of its rights, title and interest to Play-Doh, and assigned its contractual rights and obligations under the licensing agreement with the plaintiffs for marketing the Fun Factory, Jr., to the defendant, Kenner Products. In 1983, the plaintiffs brought the instant action against the defendant, alleging that Kenner had breached the contract by failing to pay royalties due to the plaintiffs under the licensing agreement. In its counterclaim, the defendant charged that the licensing agreement as to royalties that accrued subsequent to the expiration of the underlying patent, i.e., after 1983, was unenforceable under the Supreme Court's pronouncement in *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964),[1] because it required Kenner to pay royalties beyond the 17 year life of the patents. On December 15, 1983, upon consideration of cross motions for summary judgment, the district court granted partial summary judgment in favor of the plaintiffs, concluding that the contract was not *per se* invalid as to royalties accruing after the expiration of the pat-

---

**1.** In *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), the Supreme Court held that a contractual provision requiring payment of royalties for the use of a device or invention beyond the expiration of the patent

was unenforceable *per se* as to royalties due after the patents had expired because it constituted an attempted use of the patent as improper leverage in exacting the licensing agreement.

ents, after distinguishing *Brulotte* on the basis that, in the instant action, no patent application had been filed by the plaintiffs prior to the execution of the licensing agreement. *Boggild v. Kenner Prod.*, 576 F.Supp. 533, 537 (S.D.Ohio 1983), *rev'd*, 776 F.2d 1315 (6th Cir.1985), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986). The parties thereafter negotiated a settlement resolving all other outstanding issues, however reserving the right to appeal from the district court's entry of partial summary judgment. The district court entered a consent decree incorporating the settlement on June 12, 1984 (1984 decision).

The defendant filed an appeal on June 15, 1984, arguing that the Supreme Court's pronouncements in *Brulotte* were dispositive of the case. On November 13, 1985, a panel of this court reversed the district court's 1984 decision, and held that the disputed royalty payments due after the expiration of the patents were invalid *per se* pursuant the Supreme Court's mandate in *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964) (1985 appeal). The panel that initially considered the case in 1985 concluded that the plaintiffs had leveraged the impending applications for the patents as a means of exacting payment of royalties for a period of twenty-five years and remanded the case to the district court for further proceedings consistent with the panel's opinion. *Boggild v. Kenner Prod.*, 776 F.2d 1315 (6th Cir.1985), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986).

On remand, the defendant again moved for summary judgment on its counterclaim, alleging that the 1985 appellate disposition declared the licensing agreement invalid *per se* under *Brulotte* to the extent that it required payment of royalties beyond the life of the underlying patents. The district court accepted the defendant's argument and declared that the licensing agreement was unenforceable beyond the expiration of the patents in 1983, and accordingly granted summary judgment for the defendant. *Boggild*, No. C–1–83–638, unpublished opinion (S.D.Ohio April 29, 1987) (1987 decision). The plaintiffs then filed simultaneous appeals from the district court's 1987 decision, one with this circuit and the other with the Federal Circuit Court of Appeals in Washington, D.C.[2]

In the instant appeal, the plaintiffs have challenged this court's jurisdiction to review the 1987 decision of the district court, contending that under 28 U.S.C.A. § 1295(a)(1) (West Supp.1988), the Federal Circuit "has exclusive jurisdiction over appeals from the United States district courts that are based in whole or in part on 28 U.S.C.A. § 1338." [3] *See* 28 U.S.C.A. § 1295(a)(1); *see also* 15 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3903, at 58 (Supp.1988); 17 *id.* § 4104, at 110 (Supp.1987). Section 1338 provides federal district courts with jurisdiction over "any civil action arising under any Act of Congress relating to patents." 28 U.S.C.A. § 1338(a) (West 1976).[4] The plaintiffs have urged that the defendant's counterclaim, alleging that the licensing agreement was unenforceable beyond the life of the underlying patents, constituted a

---

2. See footnote 6 *infra* as to the disposition of the separate appeal to the Federal Circuit Court of Appeals.

3. Section 1295(a) reads in pertinent part:
    (a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
    (1) of an appeal from a final decision of a district court of the United States ..., if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title....
    28 U.S.C.A. § 1295(a)(1) (West Supp.1988).

4. The relevant provision of section 1338 states as follows:
    (a) The district courts shall have original jurisdiction of any civil action arising under

any Act of Congress relating to patents....
Such jurisdiction shall be exclusive of the courts of the states in patent ... cases.
28 U.S.C.A. § 1338(a) (West 1976). The Supreme Court has indicated that jurisdiction under § 1338 "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law *creates* the cause of action or that the ... right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a *necessary element* of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, —— U.S. ——, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811 (1988) (emphasis added).

claim under the patent laws within the scope of section 1338, which would divest this circuit of jurisdiction over the district court's 1987 decision under the language of section 1295(a)(1).

The plaintiffs, however, have failed to appreciate the distinction between a patent *claim* which arises under federal statutes relating to patents and which requires the court to interpret the validity and scope of a particular patent within section 1338, and a contract claim in which patent *issues* are merely incidentally implicated.

A case does not arise under the patent laws merely because questions of patent law may arise in the course of interpreting a contract.... "Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject matter of the controversy."

*Combs v. Plough, Inc.*, 681 F.2d 469, 470 (6th Cir.1982) (per curiam) (quoting *New Marshall Engine Co. v. Marshall Engine Co.*, 223 U.S. 473, 478, 32 S.Ct. 238, 239, 56 L.Ed.2d 513 (1912)); *see also Christianson v. Colt Indus. Operating Corp.*, —— U.S. ——, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811 (1988) ("[A] case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law...."); *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1429 n. 4 (Fed.Cir.1984) ("Not every dispute involving a patent 'arises under' the patent laws within the meaning of § 1338.").

Under the Supreme Court's mandate in *Wilson v. Sanford*, 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850),[5] it was well established that a contractual claim did not implicate the jurisdiction of a federal district court to decide patent claims arising under section 1338. "*Wilson v. Sandford*, [sic] 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850) and its

progeny ... have consistently held for over 130 years that contract disputes involving patents do not arise 'under any Act of Congress relating to patents,' as required by 28 U.S.C. § 1338(a)." *Beghin–Say Int'l Inc. v. Ole–Bendt Rasmussen*, 733 F.2d 1568, 1570–71 (Fed.Cir.1984); *see also Ballard Medical Prod. v. Wright*, 823 F.2d 527, 550–51 (Fed.Cir.1987); *Atari, Inc.*, 747 F.2d at 1429 & n. 4; *Combs*, 681 F.2d at 470–71. A counterclaim challenging the validity of a licensing agreement is a contractual dispute, and not an action arising under the patent laws within the scope of section 1338. "The general rule is that where an action is brought to enforce, set aside, or annul a contract, the action arises out of the contract, and not under the patent laws, even though the contract concerns a patent right." *Combs*, 681 F.2d at 470; *accord Scherr v. Difco Laboratories, Inc.*, 401 F.2d 443, 447 (6th Cir.1968) ("A suit on a patent license does not arise under the patent laws of the United States."); *Dill Mfg. Co. v. Goff*, 125 F.2d 676, 678–79 (6th Cir.) *cert. denied*, 317 U.S. 672, 63 S.Ct. 77, 87 L.Ed.2d 540 (1942).

In the instant case, the defendant's counterclaim challenged the validity of the plaintiff's licensing agreement (alleging that the terms of the contract, requiring the payment of royalties beyond the existence of the underlying patents, were unenforceable after the patents had expired) arose out of an interpretation of the contract. The counterclaim did not, however, implicate the validity or scope of the patents here in issue. Federal jurisdiction was invoked pursuant to diversity of citizenship and not section 1338. Plaintiffs' suggestion that the Federal Circuit had exclusive jurisdiction of this appeal under section 1295(a) is therefore without merit.[6]

---

5. The Supreme Court has repeatedly reaffirmed its holding in *Wilson v. Sanford. See, e.g., Luckett v. Delpark, Inc.*, 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70 L.Ed.2d 703 (1926); *New Marshall Engine Co. v. Marshall Engine Co.*, 223 U.S. 473, 478, 32 S.Ct. 238, 239, 56 L.Ed.2d 513 (1912); *Excelsior Wooden Pipe Co. v. Pacific Bridge Co.*, 185 U.S. 282, 285, 22 S.Ct. 681, 682, 46 L.Ed.2d 910 (1902); *Wade v. Lawder*, 165 U.S. 624, 627, 17 S.Ct. 425, 426, 41 L.Ed.2d 851 (1897); *Al-*

*bright v. Teas*, 106 U.S. 613, 618, 1 S.Ct. 550, 554, 27 L.Ed.2d 295 (1883).

6. In the instant appeal, the plaintiffs have joined the same issue regarding appellate jurisdiction under § 1295(a) that they had previously presented to the Federal Circuit Court of Appeals. *Boggild v. Kenner Prods.*, No. 87–1383, unpublished order (Fed.Cir. Aug. 19, 1987) (rehearing and rehearing en banc denied). The Federal Circuit concluded that it did not have

■ The plaintiffs have alternatively charged that the district court erred in granting summary judgment to the defendant in its 1987 order because unresolved factual issues required the trial court, upon remand, to consider if the plaintiffs had leveraged their bargaining position by the prospect of applying for and receiving patents for the Fun Factory, Jr. In *Brulotte*, the Supreme Court declared that a contract in which the amount of the royalty after the expiration of the underlying patents remained the same as it was during the life of the underlying patents was unenforceable as a matter of law as to the royalties accruing after the expiration of the patents. *Brulotte*, 379 U.S. at 32, 85 S.Ct. at 179 ("The contracts are ... on their face a bald attempt to exact the same terms and conditions for the period after the patents have expired as they do for the monopoly period."). The Supreme Court concluded that no issue of fact remained as to the intent of the parties in drafting the contract, because the court would have been unable to speculate as to "what the bargaining position of the parties might have been and what resultant arrangement might have emerged had the provision for post-expiration royalties been divorced from the patent and nowise subject to its leverage." *Brulotte*, 379 U.S. at 32, 85 S.Ct. at 179. In the 1985 appeal, the initial panel of this court found the relevant contractual provisions to be factually indistinguishable from those examined in *Brulotte*, and therefore concluded as a matter of law that the contract provisions requiring payment of royalties beyond the life of the patents were invalid, without the necessity for further factual inquiry. *Boggild*, 776 F.2d at 1321 ("The provisions for use of the extruder and payment of the royalties are applicable to both the pre-expiration and post-expiration periods. Therefore, under *Brulotte*, the agreement is unlawful per se.") (emphasis added); *accord id.* at 1319 ("We reverse this judgment and hold that the *Brulotte* rule of *per se* inval-

idity *precludes enforcement of license provisions* which were developed in anticipation of patent protection and which require royalty payments for use, sale or manufacture of a patented item beyond the life of the patent.") (emphasis added). The plaintiffs' allegation that issues of fact remained to be resolved upon remand by the trial court is accordingly without merit.

The plaintiffs have also suggested that the legal conclusions reached by the initial panel of this court in 1985 were clearly erroneous, thus justifying reconsideration. *See, e.g., Christianson*, 108 S.Ct. at 2177; *Petition of the United States Steel Corp. (Fuhrman v. United States Steel Corp.)*, 479 F.2d 489, 494 (6th Cir.1973). A review of the legal reasoning employed by the initial panel of this court in arriving at its disposition of the 1985 appeal indicates that it accurately adopted the Supreme Court's teachings in *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), and *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979). In addition, other courts of appeals which have examined the issue have arrived at the same legal conclusion. *See Meehan v. PPG Ind., Inc.*, 802 F.2d 881, 886 (7th Cir.1986) ("Under *Brulotte* when royalty payments extend unchanged beyond the life of a patent, patent leverage has been abused and the agreement is unlawful *per se*."), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1301, 94 L.Ed.2d 157 (1987); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1373 (11th Cir.) ("[A]greement requir[ing] ... pay[ment of] royalties at the same rate and on the same basis after the patents expired that it paid while the patent was in effect" was unenforceable as a matter of law after the patents had expired), *cert. denied*, 464 U.S. 893, 101 S.Ct. 239, 78 L.Ed.2d 230 (1983). The plaintiffs having failed to demonstrate that the result of the 1985 appeal was clearly errone-

---

jurisdiction because the defendant's counterclaim was based upon the interpretation of a contract rather than a patent. This court is in accord with that disposition. *See Christianson*, 108 S.Ct. at 2178 (Appellate court's disposition

of a jurisdictional challenge under § 1295(a) should be given deference in subsequent proceedings in another circuit raising the same issue to prevent "a perpetual game of jurisdictional ping pong....").

ous, a reexamination of that disposition is accordingly unwarranted.

■ As a final matter, the defendant seeks the imposition of sanctions under Federal Rule of Appellate Procedure 38, urging that the plaintiffs' appeal was frivolous. Ordinarily, sanctions are awarded under Rule 38 only where there is some evidence of intentional misconduct, such as pursuit of an appeal in bad faith for purposes of harassment, delay or other such improper purposes. *See, e.g., Dallo v. INS,* 765 F.2d 581, 589 (6th Cir.1985); *TIF Instruments, Inc. v. Colette,* 713 F.2d 197, 201 (6th Cir.1983); *accord Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980). In the instant appeal, the defendant has not demonstrated that the issues presented were so insubstantial or unsupported as to suggest the plaintiffs initiated this appeal in bad faith. The defendant's request for sanctions is denied.

Accordingly, the decision of the district court, granting summary judgment in favor of the defendant, is AFFIRMED.

BAILEY BROWN, Senior Circuit Judge, concurring.

The majority opinion holds that, under the Supreme Court's opinion in *Brulotte,* 379 U.S. at 32, the question of whether the license provision that would require payment of royalties after the patents have expired is a void provision is to be resolved in this case only by a consideration of the terms of the license and that other evidence of the motivation of the parties with respect to leverage is irrelevant. I am not sure that this is a correct reading of *Brulotte.* However, the panel of this court on the prior appeal clearly did hold that the issue was to be determined solely by the terms of the license and did hold that, in the light of the terms of that agreement, the requirement of payment of royalties after patent expiration was unenforceable. *Boggild,* 776 F.2d at 1320. The Supreme Court denied *certiorari.* 477 U.S. 908 (1986). This is the law of this case, and I therefore concur in the result that there be no remand for the taking of proof as to the state of mind of the parties with respect to the use of leverage.

In all other respects I agree with the majority opinion as written.