**REGENTS OF THE UNIVERSITY OF MINNESOTA, Plaintiff,**

v.

**GLAXO WELLCOME, INC., Defendant.**

**Civil No. 98–2465 (DSD/JMM).**

United States District Court, D. Minnesota.

March 16, 1999.

John D. French, Kenneth A. Liebman, Felicia J. Boyd, Faegre & Benson, LLP, Minneapolis, MN, Robert W. Spearman, Parker, Poe, Adams & Bernstein, Raleigh, N.C., of counsel, for plaintiff.

Stephen B. Judlowe, James M. Bollinger, Jason A. Lief, Hopgood, Calimafde, Kalil & Judlowe LLP, New York City, Thomas B. Heffelfinger, Daniel C. Adams, Robert Lewis, Bowman & Brooke LLP, Minneapolis, MN, Susan S. Dunn, Rick Richardson, Glaxo Wellcome, Inc., Research Triangle Park, N.C., of counsel, for defendant.

## MEMORANDUM

MASON, United States Magistrate Judge.

### Background/Procedural History

Plaintiff University of Minnesota filed this action in Hennepin County District Court on October 16, 1998. Defendant Glaxo Welcome, Inc., a North Carolina corporation, is a major manufacturer and distributor of pharmaceutical products with its principal place of business in North Carolina. It removed the action to this Court on November 16, 1998 [Docket No. 1], Invoking this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). The latter statutory provision gives federal courts exclusive jurisdiction of actions "arising under any Act of Congress relating to patents ..."

Plaintiff's Complaint alleges that Professor Robert Vince, an employee of Plaintiff, synthesized various chemical compounds which may be useful in the treatment of acquired immune deficiency syndrome ("AIDS"). Plaintiff obtained a series of patents for these compounds, referred to as the "Vince Patents." In November of 1992. Plaintiff and Defendant (then known as Burroughs Welcome Co.) entered into a License Agreement which granted Defendant an exclusive right to make, have made, use and sell compounds and products covered by claims in the Vince Patents. Complaint, at ¶ 10. The License Agreement required Defendant "to pay royalties of 5% on sales of a compound, based upon its method of manufacture, in the event that the compound was approved for sale and sold in the United States, or a royalty of 10% if the final compound as sold in the United States would infringe in the United States but for the license." Complaint, at ¶ 16.

Plaintiff alleges that Defendant developed a synthetic compound 1592U89 (hereinafter " 'U89") which could be used to treat the AIDS virus. Defendant allegedly understood that synthesis of 'U89 required the use of a compound covered by the Vince Patents. Defendant eventually developed a pharmaceutical product based upon the compound 'U89 which it calls "Ziagen." Plaintiff alleges that under the License Agreement, Defendant promised to manufacture and sell Ziagen (and other products that are based upon 'U89) in the United States, and that if the License Agreement does not expressly so provide, it should be reformed to do so.

The Complaint alleges that Ziagen, "if manufactured, used or sold in the United States would infringe upon certain of the U.S. Vince Patents ..." Complaint, at ¶ 20. According to the Complaint, Defendant now plans to manufacture Ziagen exclusively in the United Kingdom, and does not intend to pay a royalty on sales of Ziagen because it contends that "the use or sale of Ziagen in the United States will not infringe any Vince Patents in the United States ... [if it is not manufactured in the United States]." Complaint, at ¶ 24.

Plaintiff contends that Defendant must manufacture Ziagen in the United States, and must pay a 10% royalty on sales. The Complaint seeks a declaratory judgment to establish that claim. The action was commenced in state court. After Defendant removed to this Court, Plaintiff brought this Motion to Remand, in which it contends that the Court lacks subject matter jurisdiction because it does not arise under federal patent law. Alternatively, Plaintiff argues that even if the Court had subject matter jurisdiction over the action, removal violates the Eleventh Amendment to the U.S. Constitution.

## I. SUBJECT MATTER JURISDICTION

■ Plaintiff filed a timely Motion to Remand pursuant to 28 U.S.C. § 1447(c), requesting that this action be remanded to state court. 28 U.S.C. § 1447(c) provides:

"A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

28 U.S.C. § 1447(c). A motion to remand is within the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(A). *Banbury v. Omnitrition International, Inc.,* 818 F.Supp. 276, 279 (D.Minn.1993). *See also Blair v. Source One,* 925 F.Supp. 617, 618 (D.Minn.1996); *Dyrda v. Wal–Mart Stores, Inc.,* 41 F.Supp.2d 943, 944 (D.Minn.1999).

Defendant contends that this Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1338(a) provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents ... Such jurisdiction shall be exclusive of the courts of the states in patent ... cases." 28 U.S.C. § 1338(a).

"The seemingly simple phrase 'arising under' has engendered interpretation for at least a century." *Schwarzkopf Development Corp. v. Ti–Coating, Inc.,* 800 F.2d 240, 243 (Fed.Cir.1986). "The most difficult single problem in determining whether federal-question jurisdiction exists is deciding when the relation of federal law to a case is such that the action may be said to be one 'arising under' that law." 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3562, at 17–18 (1969). One

judge has stated: "The jurisprudence of 'arising under' jurisdiction is confusing because it is confused." *Hodder v. Schoharie County Child Dev. Council, Inc.,* No. 95–CV–557, 1995 WL 760832, at *9 (N.D.N.Y. Nov.14, 1995).

■ The Supreme Court has stated the abstract principles to be applied:

"A district court's federal-question jurisdiction extends over 'only those cases in which a well-pleaded complaint establishes *either* that federal law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983), in that 'federal law is a necessary element of one of the well-pleaded ... claims,'" *id.* at 13, 103 S.Ct. at 2848. Linguistic consistency, to which we have historically adhered, demands that § 1338(a) jurisdiction likewise extend only to those cases in which a well-pleaded complaint established *either* that federal patent law creates the cause of action *or* that the plaintiff's right for relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."

*Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 808–809, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988) (emphasis supplied).

■ "[T]he 'well pleaded complaint' rule contemplates that whether an action arises under federal law 'must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant

may interpose.'" *Speedco, Inc. v. Estes,* 853 F.2d 909, 912 (Fed.Cir.1988) (citations omitted). As noted by the Supreme Court, "the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913), *overruled on other grounds by Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ Determination of whether Plaintiff's cause of action "arises under" the patent laws requires the Court to "review and analyze the plaintiff's pleadings, with special attention directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws, or is a cause of action based upon a licensing agreement." *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.,* 755 F.2d 1559, 1562 (Fed.Cir.), *cert. dismissed,* 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985). In addition, "the court must consider as a whole the substance of the claim in addition to the language of the complaint, and may also consider jurisdictional facts outside the pleadings." *Air Products,* 755 F.2d at 1561.

■ Plaintiff's cause of action, which seeks a declaration of rights under a Licence Agreement between the parties, and reformation of the Agreement, is clearly not created by federal patent law. Defendant has substantiated, however, that Plaintiff's right to relief necessarily depends on resolution of whether Defendant's products infringe any of the claims in the Vince patents, and that issues of infringement raise a substantial question of federal patent law.

The Complaint seeks a declaratory judgment establishing that Defendant must manufacture Ziagen in the United States.

In this respect, the Complaint does not implicate federal law, and would not provide jurisdiction. But the Complaint also seeks a declaratory judgment that the manufacture, use or sale of Ziagen in the United States will infringe one or more of the Vince patents which are the subject of the License Agreement. The relationship between issues of infringement and the declaratory relief sought by the Complaint is not attenuated or tangential. It is present on the face of Plaintiff's Complaint:

—Paragraph 24(c) of the Complaint alleges that Defendant claims that "Article 5.1 [of the License Agreement] *does not* require Glaxo to pay the University a 10% royalty on sales of Ziagen in the United States because the use or sale of Ziagen in the United States will not infringe any Vince Patents in the United States ..."

—Paragraph 25(c) alleges that it is Plaintiff's position that "Article 5.1 *does* require Glaxo to pay the University a 10% royalty on sales of Ziagen in the United States because the use or sale of Ziagen in the United States will infringe one or more Vince Patents in the United States....."

—The Prayer for Relief asks for a declaratory judgment that Plaintiff is correct in claiming that the use or sale of Ziagen in the United States will infringe the Vince patents.[1]

The allegations and relief requested in Plaintiff's Complaint directly raise the issue of patent infringement. Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent infringement is a necessary element of the well-pleaded claims. Plaintiff asks the Court to issue a "declaration that the sale of Ziagen in the United States accrues the obligation under Article 5.1 to pay royalties of 10% to the University as provided in the License Agreement, based upon one or more of the U.S. Vince patents." Complaint Prayer for Relief, paragraph 1(a). Article 5.1 requires payment of such royalties only if the use or sale of Ziagen "would, but for the license granted herein, infringe an issued Valid Claim or a pending Valid Claim if issued." The Court cannot make the declaration requested of it unless it determines the question of patent law as to whether Ziagen infringes any Vince Patent claims.

This case presents issues similar to those considered by the Court in *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288 (5th Cir.1997). The plaintiffs in *Scherbatskoy* owned a variety of patents related to well drilling technology. The plaintiffs and defendant had a licensing agreement relating to the use of the patents. The licensing agreement included a provision which triggered a payment if the defendant acquired a company which provided services covered by the patent. The plaintiffs later learned that the defendant planned to acquire a company which they felt would trigger the royalty payment provision of the license agreement. The defendant de-

---

1. The Complaint seeks "a declaration that the sale of Ziagen in the United States accrues the obligation under Article 5.1 to pay royalties of 10% to the University as provided in the License Agreement, based upon one or more claims of one or more of the U.S. Vince Patents." Complaint, Prayer for Relief, at ¶ 1(a). (The Prayer for Relief also seeks "a declaration that sale of Ziagen manufactured in the United Kingdom accrues the obligation to pay the University royalties of 5% as provided in the License Agreement if the manufacture of Ziagen would infringe a valid claim of the Vince Patents in the United States, regardless of the actual place of manufacture." Complaint, Prayer for Relief, at ¶ 1(d)).

nied that the transaction would have such an effect. The plaintiffs later filed suit for breach of contract and fiduciary duty in Texas state court. The defendant removed the case to federal district court, asserting that jurisdiction was proper under 28 U.S.C. § 1338. The district court denied the plaintiffs' motion to remand and granted summary judgment in favor of the defendant. The plaintiffs appealed to the Fifth Circuit Court of Appeals. The defendant moved to dismiss or transfer the appeal for lack of subject matter jurisdiction.

The Fifth Circuit Court of Appeals found that the resolution of the plaintiff's breach of contract action "implicates the federal patent laws." 125 F.3d at 291. It observed that:

> [the defendant] breached the contract when it failed to pay additional royalties under the Patent License Agreement after acquiring a new company, Smith International, which, it is alleged, infringed the [plaintiffs'] patents. Clearly, determining whether Smith International infringed the [plaintiffs'] patents is a necessary element to recovery ·of additional royalties or a finding that [the defendant] breached the Patent License Agreement. Both issues require the application of the federal patent laws.

*Scherbatskoy*, 125 F.3d at 291. The court concluded that the district court had jurisdiction pursuant to Section 1338 and that the Court of Appeals for the Federal Circuit had jurisdiction over the appeal. The Court of Appeals for the Federal Circuit recently affirmed the Fifth Circuit's decision on the jurisdictional issue, noting that:

> for Scherbatskoy to prevail on its state law contract claim, Scherbatskoy must necessarily show that any "New Company" acquired by [the defendant] engages in an activity, that is "covered by" any valid Scherbatskoy patent. The Fifth Circuit implicitly equated "covered by" with infringement, and, under *Christianson*, concluded that such a showing necessarily implicated the resolution of a

substantial question of patent law. Notwithstanding any possible distinction between state law contract claims and state law tort claims and the fact that *Christianson*, *Additive Controls*, and *Hunter Douglas* involved only did latter, we cannot say that the Fifth Circuit's conclusion is implausible or clearly erroneous.

*Scherbatskoy v. Halliburton Co.*, No. 98–1290, 1999 WL 13377, at *4 (Fed.Cir. Jan.11, 1999).

Our conclusion also finds support in *Additive Controls & Measurement Systems, Inc. v. Flowdata*, 986 F.2d 476 (Fed.Cir. 1993), where the defendant obtained a patent for a device which measures the flow of liquids. The plaintiff and the defendant discussed a potential license agreement which would allow the plaintiff to incorporate the defendant's device into one of its products. The plaintiff subsequently developed its own device, which the defendant claimed infringed upon its patent. The defendant sent letters to the plaintiff's customers claiming that the plaintiff's product did in fact infringe upon the defendant's patent. The plaintiff filed suit in state court seeking damages and an injunction. The defendant removed the case to the United States District Court for the Southern District of Texas, and counterclaimed for patent infringement. The district court denied the plaintiff's motion to remand the matter to state court based on lack of subject matter jurisdiction.

The United States Court of Appeals for the Federal Circuit found that the plaintiff's state law cause of action required it to prove the falsity of the defendant's allegedly defamatory and disparaging statements. This obligated the plaintiff to show that its product did not infringe upon the defendant's patent. As such, this presented a substantial question of federal patent law, so the court affirmed the district court's decision to deny remand. *Additive Controls & Measurement Systems*, 986 F.2d at 479.

The Federal Circuit addressed similar issues in *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed.Cir. 1998). *cert. denied*, —— U.S. ——, 119 S.Ct. 1037, 143 L.Ed.2d 45 (1999). The plaintiff in *Hunter Douglas* filed a complaint against the defendant in the District Court for the Central District of California. The plaintiff alleged a cause of action under federal law, which the district court dismissed. The complaint also contained six causes of action under state law, one of which alleged "injurious falsehood." The district court exercised jurisdiction over these state law claims, and the United States Court of Appeals for the Federal Circuit affirmed. The court noted that the plaintiff's claim for injurious falsehood required it to prove an allegation of a false statement. The plaintiff's complaint alleged that "the falsity is the Defendants' assertion that they 'hold exclusive rights to make or sell window shades covered by one or more of the [Harmonic patents].'" 153 F.3d at 1329. The plaintiff argued that this assertion was false because "certain claims of the Harmonic patents are invalid and all of the claims are unenforceable."

The court found that a required element of the charge of injurious falsehood depended upon a question of federal patent law "in that either certain claims of the Harmonic patents are invalid or all of the claims are unenforceable." 153 F.3d at 1329. The court additionally noted that "all the theories upon which [the plaintiff] could prevail depend on resolving a question of federal patent law, because [the plaintiff] does not plead, in its complaint, any other basis for falsity on the Defendants' part." The court went on to hold that questions of validity and enforceability are "substantial" within the meaning of Section 1338(a). "Hunter Douglas," 153 F.3d at 1329.

Plaintiff contends that resolution of the instant dispute requires only an interpretation of contractual terms contained in the License Agreement, and belongs in state court. Plaintiff argues that, as a patent owner suing under a License Agreement, "there can be no patent infringement as a matter of law because the licensee has the patent owner's consent to use the patent." Plaintiff's Supplemental Memorandum, at 3. Plaintiff concedes that "its claim relating to Glaxo's duty to pay royalties will require the state court to employ a traditional infringement-type analysis—*e.g.*, to determine liability under the contract the court will interpret the scope of the claims of the Vince Patents and than apply those claims to Ziagen." Plaintiff's Supplemental Memorandum, at 2. Plaintiff contends that "[t]he only infringement issue presented is a hypothetical one, *e.g.*, would the licensee have infringed the patent had no license agreement existed." *Id.* at 3. Plaintiff concludes that "in an action for breach of a patent license agreement the notion of 'patent infringement' is a legal fiction and as such does not present a substantial question of federal law." *Id.*

To support this argument, Plaintiff relies upon a long line of cases which conclude that federal courts do not have jurisdiction over contract cases involving patents. As noted by one district court:

> The line between cases that "arise under" the patent law and those that present only state law contract issues is "a very subtle one," *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969 n. 2 (4th Cir.1990) (*quoting* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3582, at 307 (1984)), and the question leads down "one of the darkest corridors of the law of federal courts and federal jurisdiction." *Id.* (*quoting* Donald S. Chisum, The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation, 46 Wash.L.Rev. 633, 639 (1971)).

*Rustevader v. Cowatch*, 842 F.Supp. 171, 173 (W.D.Pa.1993). Previous opinions establish that "[a] case does not arise under the patent laws merely because questions

of patent law may arise in the course of interpreting a contract. . . . 'Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not all questions in which a patent may be the subject matter of the controversy.' " *Boggild v. Kenner Products,* 853 F.2d 465, 468 (6th Cir.1988) (citations omitted). The fact that an issue of patent law may be relevant in the interpretation of a contractual dispute "cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws as required to render the jurisdiction of the district court based on section 1338." *Speedco, Inc. v. Estes,* 853 F.2d 909, 913 (Fed.Cir.1988) (*quoting Ballard Medical Products v. Wright,* 823 F.2d 527, 530 (Fed.Cir.1987)). See also *Schwarzkopf Development Corp. v. Ti-Coating, Inc.,* 800 F.2d 240 (Fed.Cir.1986).

We are not persuaded that the issues presented by the complaints in these cases are comparable to those now before the Court. In *Ballard Medical Products v. Wright,* 823 F.2d 527, 530 (Fed.Cir.1987), the court found that plaintiff's complaint "made no claim that the licensed patent was infringed and did not seek to invalidate the patents or the license agreement." *Ballard,* 823 F.2d at 529. The court stated, "[t]hat patent validity or infringement issues may have been injected during the course of an arbitration proceeding in a contract suit forms no basis for asserting that the district court's jurisdiction was based on § 1338 and hence forms no basis for asserting jurisdiction in this court." *Ballard,* 823 F.2d at 531.

In *Speedco,* the court applied the well-pleaded complaint rule to the action that the defendant would have brought. The court concluded that the defendant would not have "to prove as an element of his well-pled contract claim that the '883 patent is valid, as issued patents are presumed valid absent proof to the contrary." *Speedco,* 853 F.2d at 913.

*Schwarzkopf* involved a suit for "failure to pay royalties due under an existing patent license agreement." The defendant argued that § 1338 jurisdiction was based upon the patent counts asserted in its defunct counterclaims. The court did not construe the license agreement as it related to the jurisdictional issue, but focused instead upon the defendant's assertion that patent issues in its counterclaim provided a basis for jurisdiction.

Finally, in *Boggild v. Kenner Products,* 853 F.2d 465, 468 (6th Cir.1988), the court found that "the defendant's counterclaim challenged the validity of the plaintiff's licensing agreement (alleging that the terms of the contract, requiring the payment of royalties beyond the existence of the underlying patents, were unenforceable after the patents had expired) arose out of an interpretation of the contract. The counterclaim did not, however, implicate the validity or scope of the patents here in issue." 853 F.2d at 468. The court also stated that "[t]he plaintiffs ... have failed to appreciate the distinction. between a patent claim which arises under federal statutes relating to patents and which requires the court to interpret the validity and scope of a particular patent within section 1338, and a contract claim in which patent issues are merely incidentally implicated." *Id.*

We do not conclude that questions concerning patent infringement were presented by the complaints in those cases. As the Court of Appeals for the Federal Circuit noted in *Additive Controls,* cases such as *Speedco* and *Ballard,* and similar cases simply did not involve "a cause of action in which Plaintiff's right to relief depended upon resolution of a substantial question of patent law." *Additive Controls,* 986 F.2d at 479.

## II. ELEVENTH AMENDMENT

██ Plaintiff urges an alternative ground in support of its Motion to Remand based upon the Eleventh Amendment to

the Constitution of the United States.[2] Plaintiff contends that a State may not be drawn into federal court by removal, any more than it could be sued directly as a defendant. The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State.

The parties each cite district court decisions from other judicial districts which they claim support their respective positions. Defendant refers the Court to cases such as *State ex rel. Stovall v. Home Cable Inc.*, 35 F.Supp.2d 783, ——, 1998 WL 977197, at *6 (D.Kan.1998) ("[t]he Eleventh Amendment does not bar removal of an action involving a federal question in which a state is the plaintiff"); *California v. ACME Fill Corp.*, No. C–7–9183–VRW, 1997 U.S.Dist. LEXIS 16847, at *4 (N.D.CA. Oct 16, 1997) ("California brought suit against Acme of its own accord to recover civil penalties. As a plaintiff, it cannot now assert immunity from suit under the Eleventh Amendment"); *State of Missouri ex rel. Jeremiah W(Jay) Nixon v. Coeur D'Alene Tribe*, No 97–0914–CV–W–6, 1997 WL 603834, *2, 1997 U.S.Dist. LEXIS 14980, at *7 (W.D.MO. Sept. 29, 1997) (plaintiff's argument that Eleventh Amendment prohibited removal to federal court was "against the weight of established Supreme Court precedent and the language of the Eleventh Amendment itself"); *State of Vermont v. Oncor Comm. Inc.*, 166 F.R.D. 313, 321 (D.Vt.1996) ("[s]uits brought by a state are not barred by the literal language of the amendment"); *South Dakota State Cement Plant Comm'n v. Wausau Underwriters Ins. Co.*, 778 F.Supp. 1515, 1522 (D.S.D.1991) ("[i]n this case, the State is the plaintiff, not the defendant: the South Dakota Cement Plant filed suit against defendant Wausau, a Wisconsin corporation. The contention that the Eleventh Amendment nevertheless has bearing upon this Court's jurisdiction is not supported by any authority cited by either party."); *Terrebonne Parish School Board v. Mobil Oil Corp.*, No. 89–1983, 1989 WL 140217, *1, 1989 U.S.Dist. LEXIS 13703, at *1–2 (E.D.La. Nov. 9, 1989) ("[w]e are aware of no case holding that the Eleventh Amendment prevents removal of a suit filed by a state as a plaintiff"); *State of Oregon v. City of Rajneeshpuram*, No. 84–359–FR, 1984 U.S.Dist. LEXIS 14903, at *3 (D.Or. Jul. 17, 1984) (Eleventh Amendment did not prohibit court from hearing action); *State of New York v. Citibank, N.A.*, 537 F.Supp. 1192, 1197 (S.D.N.Y.1982) ("[i]t is clear that an action can be removed notwithstanding the fact that a state is the plaintiff").

Plaintiff refers the court to other district court cases holding that "since the immunity granted by the Eleventh Amendment is an immunity from being made an involuntary party to an action in federal court, it should apply equally to the case where the state is a plaintiff in an action commenced in state court and the action is removed to federal court by the defendant." *Moore ex rel. State of Mississippi v. Abbott Laboratories, Inc.*, 900 F.Supp. 26, 30 (D.Miss.1995) (*quoting State of California v. Steelcase, Inc.*, 792 F.Supp. 84, 86 (C.D.Cal.1992)).

We do not resolve the questions raised by these conflicting authorities. We conclude that these authorities do not support the relief sought by Plaintiff's Motion. Plaintiff asks this Court to issue its Order remanding this case to state court. A state court does not have authority to grant the federal relief requested in Plain-

---

**2.** "The University of Minnesota is 'an instrumentality of the state' entitled to invoke Minnesota's Eleventh Amendment immunity. *See Treleven v. University of Minnesota*, 73 F.3d 816, 818–19 (8th Cir.1996)." *Humenansky v. Regents of the University of Minnesota*, 152 F.3d 822 (8th Cir.1998).

tiff's Complaint. Plaintiff's rights under the Eleventh Amendment to the Constitution, whatever they may be, do not include remanding this Complaint to the state courts.

We have already concluded that issues raised by Plaintiff's Complaint state a claim for relief under the patent laws of the United States, which may be resolved only by federal courts. Plaintiff's request for declaratory relief depends upon the resolution of a substantial question of federal patent law. Under 28 U.S.C. § 1338(a), federal jurisdiction over patent cases "shall be exclusive of the courts of the states." See also *Hunter Douglas, Inc. v. Harmonic Design,* 153 F.3d 1318, 1321 (Fed.Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1037, 143 L.Ed.2d 45 (1999) ("We understand section 1338(a), as construed by both the U.S. Supreme Court and this court, to mandate that federal courts have exclusive jurisdiction over state law causes of action in which a substantial question of federal patent law is pleaded as a necessary element of that claim").