**Alojz KURINCIC, Plaintiff–Appellant,**

v.

**STEIN, INC., Defendant–Appellee.**

No. 00–3747.

United States Court of Appeals, Sixth Circuit.

Feb. 18, 2002.

Before DAUGHTREY, GILMAN, and JOHN R. GIBSON,* Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Alojz Kurincic brought suit in state court against Stein Inc., his former employer. He alleged that his termination from employment violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and Ohio's general employment discrimination statute, Ohio Revised Code § 4112. In addition, Kurincic sued Stein for promissory estoppel, wrongful discharge in violation of Ohio public policy, and conversion. After removing the case to the appropriate federal district court. Stein moved for summary judgment. The district court granted summary judgment to Stein on Kurincic's age-discrimination, promissory estoppel, and public policy claims, and remanded the conversion claim to state court. For all of the reasons set forth below, we AFFIRM the judgment of the district court.

* The Honorable John R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I. BACKGROUND

### A. Factual background

This case arises from Kurincic's termination of employment in 1998. Kurincic had worked as a mechanic at Stein, which performs slag removal services for various Ohio steel mills. Stein discharged Kurincic after he allegedly submitted a time sheet that falsely reported his attendance at a workplace safety meeting. The safety meeting was held on April 8, 1998. Edward Konopka, a shift supervisor at Stein, saw Kurincic sign the meeting's attendance sheet and then leave the meeting room 15 minutes before the meeting began. He never saw Kurincic return to the meeting room.

Konopka later collected Kurincic's time sheet. He noticed that the time sheet reported that Kurincic had spent 30 minutes of work time attending the meeting. Because the payroll department used the time sheets to determine pay, Konopka suspected Kurincic of falsely claiming compensation to which he was not entitled. He subsequently informed Mark Huscroft, a superintendent at Stein, of his suspicion.

Huscroft commenced an investigation shortly thereafter. First, Huscroft compared Kurincic's time sheet with Kurincic's time-clock card, which showed that Kurincic had clocked out ten minutes before the meeting began. He next met with four employees who had attended the safety meeting, all of whom stated that Kurincic was not in attendance. Huscroft then confronted Kurincic. Kurincic initially told Huscroft that he had attended the meeting. But when presented with his time-clock card and the statements of his fellow employees, Kurincic acknowledged that he had not attended. He attempted to explain his absence by stating that he became ill shortly after signing the attendance sheet and thus had to leave the meeting room. Kurincic said that the illness eventually subsided, but only after the end of the meeting. Rejecting this explanation. Huscroft discharged Kurincic for theft.

### B. Procedural background

Following his discharge, Kurincic sued Stein in state court. He alleged that Stein had discharged him in violation of the ADEA and Ohio Revised Code § 4112. Kurincic did not specify how his discharge violated § 4112, a statute that prohibits employment discrimination on the basis of race, color, religion, sex, national origin, disability, age, or ancestry. His complaint stated, however, that he was 55 years-old at the time of his discharge and that his national origin is Slovenian.

Kurincic also sued Stein for promissory estoppel. He alleged that Stein had promised to discharge him only for just cause, that he had relied on the promise, and that Stein nevertheless discharged him without just cause.

Another of Kurincic's claims was for wrongful discharge based on Ohio public policy. According to Kurincic, Ohio public policy prohibits an employer from discharging an employee on the basis of age or national origin. Kurincic alleged that Stein terminated his employment for both reasons.

Finally, Kurincic asserted a claim for conversion, claiming that a Stein employee removed the personal items that he had kept in his work locker. The employee allegedly converted Kurincic's property at Stein's request.

Based on the federal question presented by Kurincic's ADEA claim, Stein removed the case to the United States District Court for the Northern District of Ohio. Stein then filed a motion for summary judgment, arguing that Kurincic's claims either lacked evidentiary support or were legally barred. The district court granted

Stein's motion with regard to Kurincic's age-discrimination, promissory estoppel, and public policy claims, but remanded the conversion claim to state court. In addition, the district court concluded that Stein had not pled a claim of national-origin discrimination.

Kurincic subsequently filed this timely appeal. He contends that the district court erred in granting summary judgment to Stein on his age-discrimination and promissory estoppel claims, and that the district court erroneously concluded that he had not pled a claim of national-origin discrimination.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### B. Stein was entitled to summary judgment on Kurincic's age-discrimination claims

Kurincic argues that the district court erred in granting summary judgment to Stein on his age-discrimination claims. We find no merit to this argument.

Both the ADEA and Ohio Revised Code § 4112 prohibit an employer from discharging an employee on the basis of the employee's age. 29 U.S.C. § 623(a); Ohio Rev.Code § 4112.02(A). An employee may establish a claim under either statute by offering direct or indirect evidence of age discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997) (setting forth the manner in which a plaintiff may prove unlawful discrimination under the ADEA); *Bucher v. Sibcy Cline, Inc.*, 137 Ohio App.3d 230, 738 N.E.2d 435, 442 (Ohio Ct.App.2000) (stating that the standards governing ADEA claims also apply to claims under Ohio Revised Code § 4112). Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). Indirect evidence of discrimination, on the other hand, permits the inference that an employer acted with discriminatory animus. *Kline*, 128 F.3d at 348.

We first consider whether Kurincic offered direct evidence of age discrimination. Kurincic argues that his affidavit contained direct evidence of Stein's discriminatory animus. In his affidavit, Kurincic stated that he "was informed by Dan, a co-worker and personal friend of Mark Huscroft, that Huscroft wanted to get rid of old employees ...." But the statement by "Dan" is inadmissible hearsay. Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. Fed. R.Evid. 801(c). The statement by Dan to Kurincic is hearsay because it was offered for the truth of the matter asserted;

namely, that Huscroft in fact wanted to "get rid of old employees." Although the statement allegedly attributable to Huscroft as a supervisor might not be considered hearsay if it had been said directly to the testifying witness. Fed.R.Evid. 801(d)(2), it became hearsay when repeated through Dan to Kurincic. Kurincic thus failed to offer any direct evidence of discrimination. We must therefore decide whether Kurincic offered sufficient indirect evidence to permit an inference of age discrimination.

A three-step framework guides the analysis of age-discrimination claims based upon indirect evidence. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998) (explaining the burden-shifting analysis for ADEA claims). This framework first requires an employee to establish a prima facie case of age discrimination. *Id.* If the employee meets this burden, the employer may respond by offering a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Id.* The employee then has the burden of rebutting this proffered reason by proving that it was a pretext designed to mask age discrimination. *Id.*

In the present case, the district court held that, even assuming Kurincic offered sufficient evidence to establish a prima facie case of age discrimination, he nevertheless failed to show that Stein's legitimate, nondiscriminatory reason for his discharge—his alleged theft—was pretextual. We agree with the district court's conclusion.

■ This court has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir.1998). Under this rule, so long as an employer honestly believed in its proffered nondiscriminatory reason for discharging an employee, the

employee cannot establish that the reason was pretextual simply because it is ultimately shown to be mistaken or incorrect. *Id.* at 806. An employer has an honest belief in its reason for discharging an employee when the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." *Id.* at 807.

■ The evidence in this case supports Stein's claim that it honestly believed in its proffered nondiscriminatory reason for discharging Kurincic. Stein discharged Kurincic only after taking reasonable steps to confirm that he did not attend the safety meeting despite the contrary notation on his time sheet. Thus, in choosing to discharge Kurincic for theft, Stein made a "reasonably informed and considered decision." *Id.*

Kurincic, however, insists that Stein could not have reasonably believed that he committed theft. First, Kurincic denies that he ever intended to submit his false time sheet. He states that he completed his time sheet before the meeting, but Konopka collected the sheet "prematurely." Kurincic offers no evidence, however, showing that Stein had any reason to believe that his time sheet was collected in error. He did not so state when confronted by Huscroft. Instead, Kurincic initially insisted that he had actually attended the meeting, and admitted otherwise only when presented with evidence proving that he was not in attendance.

This, in our opinion, refutes the dissent's position that a genuine issue of material fact exists as to whether Stein had a reasonable belief that it possessed a valid basis for discharging Kurincic. We believe that any person in Kurincic's situation who had not truly intended to request unearned pay would have immediately pointed out that the failure to correct his time

sheet was an oversight. Instead, when first confronted by Huscroft, Kurincic falsely insisted that he had in fact attended the meeting. Such evasive conduct, in our view, makes his subsequent claim of innocence so unbelievable that all reasonable jurors would conclude that Stein honestly believed that Kurincic sought pay that he had not earned.

■ Second, Kurincic contends that, even if he did intentionally submit a false time sheet, he did not commit theft because he never received any payment for attending the meeting. He offers no reasonable explanation, however, as to why Stein had to delay his discharge until after he received compensation based on his false time sheet. Attempted theft is sufficient grounds for termination under Stein's policy against employee theft. *Cf.* Ohio Rev.Code § 2913.01(K) (defining a "theft offense" for purposes of Ohio law as including both the commission and the *attempt to commit* various criminal offenses). Moreover, even if Stein had incorrectly determined that attempted theft warranted termination under its policy, the honest belief rule prevents Kurincic from using the alleged mistake to prove that Stein's proffered reason for his discharge was simply a pretext to mask age discrimination. *Smith*, 155 F.3d at 806.

■ Finally, Kurincic maintains that Stein's contention that it discharged him for theft is belied by the conclusion of the Ohio Unemployment Compensation Review Commission (the Commission) that he was discharged without just cause. But the Commission's determination was made more than three months after Stein discharged Kurincic. Under this circuit's honest belief rule, Kurincic cannot show that Stein's proffered reason for his discharge was pretextual simply by offering evidence that Stein's decision was later found incorrect. The probative value of the Commission's determination, moreover, is limited by the fact that Stein presented no evidence at the hearing on Kurincic's unemployment claim.

Based on the above factors, we conclude that Kurincic failed to offer sufficient direct or indirect evidence of age discrimination. We therefore hold that the district court did not err in granting Stein's motion for summary judgment on Kurincic's federal and state age-discrimination claims.

C. Stein was entitled to summary judgment on Kurincic's promissory estoppel claim

■ Kurincic next contends that the district court erred in granting summary judgment to Stein on his promissory estoppel claim. We disagree. In suing for promissory estoppel, Kurincic alleged that he was promised by one of Stein's managers that he would be discharged only for just cause. The collective bargaining agreement (CBA) governing Kurincic's employment with Stein, however, already provided that he could be discharged only upon a determination of just cause. He must thus base any wrongful discharge claim on the "just cause" provision in the CBA, not on an oral promise made outside of the collective bargaining process. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 801 (6th Cir.1990) (holding that a bargaining unit employee could not base a promissory estoppel claim on a promise made other than in the CBA).

■ But even if we were to recast Kurincic's promissory estoppel claim as alleging a breach of the CBA, it would do him no good. A claim for the breach of a CBA may only be brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463

U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (stating that § 301 displaces any state cause of action for breach of a CBA). To sue under § 301, Kurincic would have had to bring suit within six months of the alleged breach of the CBA. *Fox,* 914 F.2d at 803 (holding that § 301 actions brought by individual employees are governed by a six-month statute of limitations). He did not file the present action, however, until more than one year after the termination of his employment. Accordingly, we conclude that the district court did not err in granting Stein's motion for summary judgment on Kurincic's promissory estoppel claim.

D. Stein was entitled to summary judgment on Kurincic's national-origin discrimination claim

■ Kurincic insists that he asserted a claim for national-origin discrimination in his complaint. He further argues that he offered sufficient evidence to reach the jury on this claim. We agree that Kurincic pled a national-origin discrimination claim in his complaint. The first count in Kurincic's complaint both states his national origin and alleges that his discharge violated Ohio Revised Code § 4112, a statute that prohibits, among other things, national-origin discrimination. Under the notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure, the first count of the complaint therefore asserts a claim of national-origin discrimination under Ohio law. Fed.R.Civ.P. 8(a) (stating that a complaint must set forth "a short and plain statement" of a claim for relief); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."). The district court thus erred in concluding that Kurincic had failed to properly plead a national-origin discrimination claim.

Nevertheless, our review of the record convinces us that Kurincic failed to offer sufficient evidence of national-origin discrimination to withstand summary judgment. As with his age-discrimination claims, Kurincic may establish a national-origin discrimination claim by offering either direct evidence of discrimination or indirect evidence establishing an inference of discrimination. *Shannahan v. B.F. Goodrich Aerospace Landing Gear Div.,* No. 98–3104, 181 F.3d 103, 1999 WL 357823, at \*2 (6th Cir. May 26, 1999) (unpublished table decision) (stating that an employee can prove national-origin discrimination under Title VII of the 1964 Civil Rights Act by offering either direct or indirect evidence of discrimination); *Bucher,* 738 N.E.2d at 442 (stating that Ohio courts analyze claims under Title VII and Ohio Revised Code § 4112 under federal case law interpreting Title VII). Kurincic offered neither type of evidence.

■ First, Kurincic failed to timely present any direct evidence of national-origin discrimination. Although Kurincic stated in a late-filed affidavit that Huscroft called him a "DP," a slang term for "displaced person," Kurincic earlier testified during his deposition that he never heard Huscroft make any derogatory remarks about his national origin. "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts ... earlier deposition testimony." *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986).

Second, Kurincic failed to offer evidence sufficient to establish an inference of national-origin discrimination. As previously explained, Kurincic offered no evidence showing that Stein lacked an honest belief in its legitimate, nondiscriminatory reason for his discharge. He thus could not prove

that Stein's proffered reason was a pretext designed to mask national-origin discrimination.

Based on the above, we hold that Stein was entitled to summary judgment on Kurincic's national-origin discrimination claim.

### E. Stein is not entitled to sanctions under Rule 38 of the Federal Rules of Appellate Procedure

The final issue presented for our consideration is Stein's motion for sanctions under Rule 38 of the Federal Rules of Appellate Procedure. Stein strenuously argues that Kurincic's appeal is frivolous. Under Rule 38, a frivolous appeal may justify the imposition of sanctions:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R.App. P. 38.

■■■ Because of the risk that Rule 38 sanctions will dissuade litigants from bringing meritorious appeals, a decision of whether to impose such sanctions is generally a "difficult choice." *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir.1999) (recognizing the risk that the imposition of sanctions will chill appeals that involve "serious, controversial, doubtful, or even novel questions"). Rule 38 sanctions are therefore imposed in only rare circumstances, most often "where there is some evidence of intentional misconduct, such as pursuit of an appeal in bad faith or for purposes of harassment, delay or other improper purposes." *Bogglid v. Kenner Prods., Div. of CPG Prods. Corp.*, 853 F.2d 465, 470 (6th Cir.1988). An appeal may also warrant sanctions if it "essentially had no reasonable expectation of altering the district court's judgment

based on law or fact." *Wilton Corp.*, 188 F.3d at 677 (imposing sanctions after concluding that the appeal was "wholly without merit").

■■■ In the present case, Stein contends in its brief that Kurincic's appeal "screams" for sanctions because it was brought in bad faith and is completely devoid of merit. We disagree. First, the record contains no compelling evidence of bad faith on the part of Kurincic or his counsel in bringing this appeal. Second, as shown by our preceding analysis, the arguments presented in this appeal are not so implausible as to be considered frivolous. We therefore deny Stein's request for sanctions under Rule 38.

### III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.

JOHN R. GIBSON, Circuit Judge, dissenting.

I dissent. The court errs today in its treatment of the pretext issue, and in concluding there was no genuine issue of material fact as to whether Kurincic committed theft.

Kurincic signed the attendance sheet for the safety meeting and filled out a mechanic's report for the day showing the figure one-half in a column following the entry "toolbox meeting and safety meeting." His timecard shows that he punched out at 6:21 a.m. and the meeting commenced at 6:30 a.m. Kurincic stated, both in an affidavit and during deposition, that he had taken a seat in the meeting room, became ill, went to the men's room and changed clothes, and did not return to the meeting. In response to requests for admissions, Kurincic admitted that his signature was on the sign-up sheet and the

mechanic's report, but denied that he requested payment for attending the meeting.

Konopka, the foreman, confirmed that Kurincic had entered the meeting room shortly after 6:00 a.m. and signed the meeting sheet, but that he left before the meeting started. After the meeting concluded, Konopka collected the mechanic's reports of the employees and saw that Kurincic's report solicited payment for one-half hour of attendance at the safety meeting. Konopka then obtained Kurincic's timecard and noticed that Kurincic had punched out at 6:21 a.m. Konopka confronted Kurincic, who insisted that he attended the meeting. When Konopka said he knew Kurincic was not present at the meeting, Kurincic stated that he initially showed up but was forced to depart early, having become ill unexpectedly. Aware that Stein has "a zero-tolerance policy" for employee theft, Konopka spoke to Mark Huscroft, the superintendent, that day.

Huscroft made inquiries of other employees who had attended the meeting and obtained the mechanic's report and the safety meeting sign-in sheet. Because "Stein, Inc. has zero tolerance for theft or suspected theft of the Company." (Aff. of Mark Huscroft at 2), Huscroft made an initial decision to terminate Kurincic. Huscroft then told the union steward, Rogers, of his decision. According to Huscroft, Rogers then said that he had seen "Kurincic walking toward the employee parking lot with a bag in his hand," having "changed out of his work clothes, before the conclusion of the April 8, 1998 safety meeting." (*Id.* at 3.) Huscroft also talked to James Conlon, Vice President and General Counsel of Stein. Conlon stated that Stein's "rather uniform policy ... is zero tolerance for any instances of employee theft. Accordingly, I approved the termination ...." (Aff. of James Conlon at 2.)

Kurincic testified in his deposition that Huscroft told him the reason for termination was his "stealing half an hour of company time."[1] (Dep. of Alojz Kurincic at 47–48.)

Our standard of review requires us to consider the facts in the light most favorable to the nonmoving party, Kurincic. So viewed, the evidence here creates genuine issues of material fact as to whether Kurincic committed theft and whether Stein should have concluded that he did so. First, Konopka acknowledged that Kurincic was in the meeting room shortly before the meeting started. Second, Kurincic checked out on the timecard at 6:21. Third, Rogers reported seeing Kurincic leaving the parking lot before the *conclusion* of the meeting. These facts are all in accord with Kurincic's explanation that he intended to attend the meeting, only left the meeting because he became ill, and did not intend to "steal" time from his employer. In addition, Stein's practice of paying no attention to timecards except for audit purposes raises further questions about the legitimacy of Stein's proffered explanation for its decision to terminate Kurincic. (Aff. of Mark Huscroft at 2.)

I am convinced the facts taken in the light most favorable to Kurincic are insufficient to support Stein's conclusion that

---

1. The Vice President and General Counsel, Conlon, suspected that Kurincic's locker and toolbox may have contained Stein equipment and parts, and he arranged to have it opened, on videotape, in the presence of union officials. Conlon stated that three pumps were in the locker which "appeared to resemble the type of equipment used by Stein" and one of its customers (Aff. of James Conlon at 3), but Kurincic stated that these were his personal property. Stein does not contend that it fired Kurincic because stolen property was found in Kurincic's locker.

there was theft. Theft is defined by law. On the facts presented to Stein's general counsel, his conclusion that theft occurred was legally unsupportable. Kurincic was never paid for the meeting. There was no taking, or obtaining, or exerting control over property. Moreover, there was evidence before Stein that Kurincic did not intend to skip the meeting when he signed the sheet, but that he was forced to leave because he got sick.

The court today attempts to prop up its decision by stating that "[a]ttempted theft is sufficient grounds for termination under Stein's policy against employee theft." *Supra* p. 8. Vice President and General Counsel Conlon, however, did not give attempted theft as the justification for discharge. Theft, plain and unvarnished, was the conclusion of Konopka, Huscroft, and Conlon, and was the reason Huscroft gave Kurincic for his firing. Ohio Revised Code § 2913.01(k) defining "a theft offense" as including an attempt adds nothing to the analysis, nor does Huscroft's addition of the term "suspected" theft. Purely and simply, there was no theft. This makes applicable the following statement of Justice O'Connor in *Reeves v. Sanderson*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000):

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

*Id.* at 147, 120 S.Ct. 2097 (internal citation and quotation marks omitted).

I also conclude that the court today stretches too far in applying the honest belief rule, as articulated in *Smith v. Chrysler*, 155 F.3d 799 (6th Cir.1998) (Gilman, J.). *Smith* stated that in order for an employer's proffered reason to be considered "honestly held," the employer "must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 807. This does not mean that an employer can shelter itself behind a shoddy investigation or prevent the fact finder from resolving disputed facts. Even if the employer points to particularized facts motivating the decision, the employee has the opportunity to produce "proof to the contrary." *Id.* (quoting *Pesterfield v. TVA*, 941 F.2d 437, 443 (6th Cir.1991)). One kind of proof to the contrary is evidence that the employer's reasoning or investigation was obviously flawed: "As one court noted in a similar context, 'if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.'" *Id.* (quoting *Fischbach v. Dist. of Columbia Dept. of Corr.*, 86 F.3d 1180, 1183 (D.C.Cir. 1996)). "When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence.' then any reliance placed by the employer in such a process cannot be said to be honestly held." *Id.* at 807–08.

Here, the general counsel, the superintendent, and the foreman had before them facts that indicated Kurincic did not intend to steal from the company and they had no evidence that he had wrongfully taken

company money. While the mechanic's report suggested Kurincic was attempting to get paid for attending the meeting, his timecard, and the testimony of Konopka and Rogers discussed above, supported a contrary conclusion. Kurincic produced evidence that Stein should have known the theft allegation to be unfounded. Whether the proffered reason was the true one or a pretext requires the decision of a fact finder.

The court today holds that all jurors would have to conclude Stein believed Kurincic intended to be paid for the meeting without attending it, *supra* p. 8, even though Kurincic denied this to Konopka and offered an innocent explanation for signing the meeting sheet and mechanic's report. (An innocent explanation, moreover, that was not inconsistent with the objective evidence before Stein when it fired Kurincic.) The court holds that Kurincic's innocent explanation was of no legal effect because he initially told Konopka he attended the meeting and only after Konopka contradicted this, did Kurincic say he left early because he got sick. This holding is just a credibility judgment about Stein's credibility judgment, and neither the district court nor we should be making such assessments on summary judgment.

I believe this is an important point because the "honest belief" rule, if not applied with punctilious care for preserving issues of fact, can make a serious incursion into plaintiffs' ability to prove discrimination circumstantially. The rule is properly applied where there is no question of fact about what an employer reasonably concluded on the facts before it at the time of decision, even though the facts later appear to be incomplete or wrong. If, for instance, during Stein's investigation. Kurincic had admitted intent to steal or made no explanation or even stuck to a story that was undeniably false, Stein would be entitled to summary judgment even if Kurincic later explained his actions. But in this case, Kurincic articulated an innocent explanation before Stein made its decision: he came to the meeting but got sick. Whether Stein believed this or not is a question of fact, not of law.

Perhaps Stein had other reasons for Kurincic's discharge, but theft was the reason given. I would reverse and remand for trial by a fact finder on this issue.